(No. 33214.—)

IN RE ESTATE OF CHARLES W. KENT.—(LESLIE C. KENT *et al.,* Appellants, *vs.* WARREN M. VOLLMER *et al.,* Appellees.)

*Opinion filed Sept. 23, 1954—Rehearing denied November 15, 1954.*

82

Cassidy, Sloan & Cassidy, of Peoria, for appellants.

Chester L. Anderson, and J. Martin Lawless, both of Peoria, for appellees Warren M. Vollmer *et al.;* William W. Dunn, of Peoria, for appellee Belle E. Kent.

Mr. Justice Maxwell delivered the opinion of the court:

This appeal from the trial court's order, after appeal from the probate court, denying probate of the will and a purported codicil of Charles W. Kent, deceased, involves the validity of these instruments. The issues are before us for consideration by reason of a freehold being involved, the decedent being possessed of extensive real estate in the city of Peoria at the time of his death. We find it unnecessary to discuss the details concerning the provisions of the instruments, the persons named therein, and the quantum of the estate.

In 1923, the decedent executed his last will which complied with all the necessary legal formalities. On the day of making this will, the marriage between the testator

Charles W. Kent and Lillian Moss was annulled by the circuit court of Peoria County. Later, on January 1, 1941, Charles W. Kent married May Stewart. A divorce decree obtained October 7, 1942, dissolved the said marriage between Charles W. Kent and May Stewart Kent. Charles W. Kent then married Belle E. Moore on January 10, 1943. On January 9, 1943, Kent and his wife-to-be entered into an antenuptial agreement providing for regular monthly payments to the wife, and containing the general and usual provisions releasing all rights in each other's property and estates.

On August 1, 1946, Kent had prepared a typewritten document intending the same to be a codicil to his last will. On the same date, after acknowledging the same to be his codicil, and at his request his wife, Belle E. Moore Kent, signed the same as a witness. On the following day, August 2, 1946, a friend, Adrienne Walker, signed the intended codicil as a witness. It was on this occasion that Kent signed the instrument. It further appears that on several occasions after August 2, 1946, Kent acknowledged to his wife the execution of this latter instrument.

It is contended by appellees that the original will of Kent was revoked by virtue of his subsequent marriage. The statute now in force concerning the revocation of wills, among other things, provides that marriage by the testator shall *be deemed* a revocation of any existing will executed by the testator prior to the date of the marriage. (Ill. Rev. Stat. 1953, chap. 3, par. 197.) The evidentiary fact, pointed out by appellants, that Kent had entered into an antenuptial agreement five days prior to his marriage with May Stewart (similar to the later antenuptial agreement prior to his marriage with Belle Moore,) would be of persuasive force as the statute now reads. It is undeniable that the legislative intention in the present statute was to create a principle of presumptive revocation. Unless the testator by some clear and positive act, being mindful

of entering into a marriage, evinces an intention that his last will shall remain in force and effect, the operation of presumptive revocation by marriage will operate to nullify his testament. We have carefully reviewed the history of this principle of revocation of will by marriage from the common law through the various Illinois statutory provisions. When our Probate Act was first passed in 1939, the legislature did not include the words "be deemed" in the statute and this condition existed until July, 1941, when these words were placed in the statute.

At the time of Kent's marriage to May Stewart, the statute read as follows: "Marriage by the testator shall revoke any existing will executed by the testator prior to the date of the marriage." This statutory language admits of no ambiguity. We have uniformly held that where the language of a statute is plain and unambiguous there is no room for construction and it must be given effect by the courts. *Sup* v. *Cervenka,* 331 Ill. 459.

This court cannot conjecture that at the time of passing the new Probate Act the words were omitted by inadvertence or without intention; we can only take the statute as it was passed. It is manifestly clear that at the time of the marriage of Kent and May Stewart in January, 1941, the statute clearly provided that a marriage in itself and *per se* revoked the will of the testator. As stated in the *Sup* case, "If the obvious meaning of a statute should be followed by harsh consequences, such a result cannot influence the courts in administering the law. The responsibility for the justice or wisdom of legislation rests upon the legislature, and it is the province of the courts to construe and not to make the laws."

Appellants further contend that the instrument executed by Kent in 1946, intended as a codicil to his last will, revived and republished his 1923 will. This 1946 instrument was witnessed by his wife on a day prior to his execution and the witnessing of the instrument by Adrienne Walker.

We deem it unnecessary to discuss various objections raised to this instrument other than the question of the competency of the wife of Kent to sign this instrument as an attesting witness. Section 43 of the Probate Act (Ill. Rev. Stat. 1953, chap. 3, par. 194,) since 1939 has read as follows: "Every will by which any real or personal estate is devised or bequeathed shall be reduced to writing, shall be signed by the testator or by some person in his presence and by his direction, and shall be attested in the presence of the testator by two or more credible witnesses." The question remains as to whether the wife of a testator can attest his will as a witness thereto, as we have uniformly held that the competency of witnesses to a will must be tested as of the time of attestation. (*Judy* v. *Judy,* 261 Ill. 470.) We also held that "credible" means competent. (*Gump* v. *Gowans,* 226 Ill. 635.) The latter case, decided by this court in 1907, held that the incompetency of husband and wife to testify as witnesses for or against each other applies to the attestation of wills. We also there held that our Evidence Act has not removed this common-law disqualification. Section 8 of the Evidence Act provides, "Nothing in this act contained shall in any manner affect the laws now existing relating to the settlement of the estates of deceased persons, infants, persons who are mentally ill or mentally deficient, or habitual drunkards having conservators, or to the acknowledgment of proof of deeds and other conveyances relating to real estate, in order to entitle the same to be recorded, or to the attestation of the execution of last wills and testaments, or of any other instrument required by law to be attested." (Ill. Rev. Stat. 1953, chap. 51, par. 8.) Section 8 seems to clearly retain the common-law disqualification and renders either husband or wife incompetent to attest the other's will.

Lacking attestation of at least two credible witnesses the instrument intended as a codicil and executed by Kent in 1946 was void and of no effect, and could therefore

neither revive nor republish any pre-existing revoked will. The validity of the antenuptial agreement entered into between Kent and his surviving widow was not an issue in the proceedings below and is not subject to review in this court. The judgment of the circuit court of Peoria County, denying probate of the 1923 will and the purported 1946 codicil, is affirmed.

*Judgment affirmed.*