336 P.2d 674

Winnifred WHITE, Executrix of the Estate of Edgar L. White, Deceased, Plaintiff-Repondent and Cross-Appellant,

v.

CONFERENCE CLAIMANTS ENDOWMENT COMMISSION OF THE IDAHO ANNUAL CONFERENCE OF THE METHODIST CHURCH; Board of Missions and Church Extension of Idaho Annual Conference of Methodist Church; Beulah Cass; Methodist Church of Filer, Idaho; Edna Stillwell, Defendants-Appellants and Cross-Respondents,

and

Edgar L. White, Jr., and Virginia G. White, husband and wife, Defendants-Respondents and Cross-Appellants,

and

State of Idaho, Defendant-Respondent.

No. 8585.

Supreme Court of Idaho.

Feb. 27, 1959.

Earl E. Walker, Twin Falls, for defendants-appellants and cross-respondents.

Stephan, Stephan & Heap, Twin Falls, for plaintiff-respondent and cross-appellant.

Benoit & Benoit, Twin Falls, Stuart & Stuart, Chariton, Iowa, for defendants-respondents and cross-appellants.

Graydon W. Smith, Atty. Gen., Harold Randquist, Asst. Atty. Gen., for defendant-respondent.

SMITH, Justice.

May 19, 1948, Edgar L. White, Sr., then unmarried, executed his will. He bequeathed to appellants Methodist Church organizations sums totaling $12,500, to appellant Beulah Cass $5,000, and to appellant Edna Stillwell $2,500, all payable in five equal annual payments beginning at the end of the first year after death. He bequeathed and devised the remainder of his estate, which included 193½ acres of farm land, to his son, respondent Edgar L. White, Jr. He directed that the probate and distribution of the estate be not concluded until the end of the fifth year following death.

February 5, 1949, Edgar L. White, Sr., married, and on the same date, after marriage he executed and delivered a deed, in consideration of the sum of $1 and love and affection, conveying 80 acres of his land to his wife, Winnifred, as her sole and separate property.

July 31, 1949, Edgar L. White, Sr., in his own handwriting, wrote, signed and dated an instrument, hereinafter referred to as Exhibit L, certifying that he had given his automobile, trailer house, camera equipment, and other personal effects as she may desire, to his wife. He then directed in the instrument:

"She shall have rent free use of Residence where she now resides for 5 years from date of my death together with income from the farm.

"After five years from date of my death the place of 113–½ acres shall become the property of my son."

He named his wife as executrix. He directed her to take such instrument to his attorney, which she did. The attorney prepared a codicil which she took to Mr. White at the hospital, where he was a patient. The district court found that Mr. White executed and published the codicil July 5, 1949.

Mr. White recited in the codicil that he reaffirmed and republished his will of May 19, 1948, "except as revoked, modified and changed by this Codicil;" also that since marriage he had given to his wife his automobile and trailer house, and had conveyed to her certain real property interests, as her sole and separate property. He then bequeathed to her his camera equipment and certain personal effects. He then recited in the codicil:

"I also give and grant to the said Winnifred White the right to hold exclusive possession of and reside in the home located on my home place comprised of 113–½ acres, where we now reside, for the full period of five (5) years following my demise, and at the end of said five (5) year period posses-

**24**

sion thereof shall be surrendered to my son, Edgar L. White, Jr. During the said period of five (5) years following my demise the said Winnifred White shall have and she is hereby given and bequeathed all the rents accruing from said home place where we now reside."

The codicil contains further direction:

"And I now revoke those certain provisions of my said Last Will and Testament dated May 19, 1948, insofar as they conflict with the terms and provisions of this Codicil."

No formal marriage settlement contract was ever entered into between Edgar L. White, Sr., and his wife.

The death of Edgar L. White, Sr., occurred August 6, 1949.

December 4, 1950, decedent's estate was admitted to probate in the Twin Falls County probate court, and Winnifred White was appointed executrix of decedent's will and codicil; notice to creditors was first published March 2, 1952; inventory and appraisement of the estate was filed March 7, 1952, and due copy mailed to the Inheritance Tax Division of the State of Idaho. No determination of gross value of decedent's estate, nor of the amount of any transfer tax has ever been made.

May 17, 1955, more than five years after decedent's death, plaintiff, executrix, filed a complaint for declaratory judgment, requesting the construction of the will and codicil and directing the manner of executing its trusts; also requesting determination of the question whether by virtue of I.C. § 14–405, she should pay any transfer tax to the State of Idaho, and citing the defendants to set forth and submit their several claims and demands for decision.

The various assignments of the parties appellant raise the following questions for determination:

First, was the testator's original will of May 19, 1948, revoked by his marriage February 5, 1949?

Second, what must be determined as the date of each of the following occurrences:

 (1) of execution of the codicil; and

 (2) republication of the original will, if not theretofore revoked; or

 (3) republication and revival of the original will if theretofore revoked?

Third, did the trial court err in admitting in evidence testator's hand written instrument, Exhibit L?

Fourth, was the original will or a substantial portion thereof revoked by the codicil? If so,

(1) did the codicil revoke all the general bequests in the original will, or

(2) only the charitable bequests?

Fifth, must the executrix pay to the State of Idaho any tax imposed or computed upon the value of the properties of decedent's estate transferred in excess of the statutory exemptions, before the executrix will be permitted to distribute and close the estate?

In approaching the first question whether testator's original antenuptial will of May 19, 1948, was revoked by his marriage of February 5, 1949, I.C. § 14-312 appears controlling. Such section of the statute reads:

"Revocation by marriage.—If, after making a will, the testator marries, and the wife survives the testator, the will is revoked, unless provision has been made for her by marriage contract, or unless she is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation must be received."

This section of the statute contemplates:

(1) The testator's antenuptial will;
(2) The subsequent marriage of testator;
(3) The death of testator;
(4) The survival of the wife;

(5) Revocation of the will, unless
 (a) provision has been made for her by marriage contract, or
 (b) she is provided for in the antenuptial will, or
 (c) she is mentioned therein in such a way as to show an intention not to make such provision.

Each alternative requirement set out in the 5th paragraph contemplates completed performance prior to the marriage, in order that the will be not revoked.

Here, we have an antenuptial will which neither provided for Winnifred White, nor mentioned her therein in such a way as to show an intention not to provide for her, the subsequent marriage, the testator's death, and his wife's survival. Admittedly there was no written instrument of marriage contract; but was there in existence prior to the marriage any marriage contract contemplated by the statute?

Appellants Methodist Church organizations in their amended answer allege that Edgar L. White, Sr., pursuant to an oral antenuptial marriage agreement, agreed that upon marriage he would, and on February 5, 1949, after the marriage he did, convey to his wife, Winnifred, the 80 acres of land, describing it, by deed duly executed and delivered.

Such conveyance after marriage, by testator to his wife, fails to constitute proof

of consummation of a marriage contract contemplated by the statute. Such evidence cannot be received to rebut the presumption of revocation of the antenuptial will, simply because the statute requires *the evidence* to be the marriage contract itself showing "provision *has been made* for her," the wife yet to be, naming her, in consideration of the marriage to be consummated; provision *to be made* for her after marriage is insufficient. See In re Poisl's Estate, 44 Cal.2d 147, 280 P.2d 789; Sternberg v. St. Louis Union Trust Co., 394 Ill. 452, 68 N.E.2d 892, 169 A.L.R. 545; In re Kent's Estate, 4 Ill.2d 81, 122 N.E.2d 229; In re Gherra's Estate, 44 Wash.2d 277, 267 P.2d 91; In re Steele's Estate, 45 Wash.2d 58, 273 P.2d 235; Hannah v. Beasley, 132 W.Va. 814, 53 S.E.2d 729; Annotation 127 A.L.R. 768.

Herr v. Herr, 13 N.J. 79, 98 A.2d 55, points out that a postnuptial settlement made pursuant to a parol antenuptial promise, followed only by marriage, amounts to no more than a voluntary settlement and therefore rests in the theory of gift. See also In re Corker's Estate, 87 Cal. 643, 25 P. 922; In re Smith's Estate, 15 Cal.App.2d 548, 59 P.2d 854; In re Poisl's Estate, supra.

■ The statute, I.C. § 14–312, prohibits the reception of any evidence other than the antenuptial will and any marriage settlement contract, to rebut the presumption of revocation of the antenuptial will. The evidence herein fails to overcome such presumption. Testator's antenuptial will of May 19, 1948, was therefore revoked upon testator's marriage February 5, 1949.

■ The law presumes that a subsequent marriage of the testator has wrought such a change in his condition in life as to cause him to destroy or cancel the previous will. In re Axcelrod's Estate, 23 Cal. 2d 761, 147 P.2d 1; In re Turney's Estate, 101 Cal.App.2d 720, 226 P.2d 80; In re Poisl's Estate, supra. This rule is discussed in In re Duke's Estate, 41 Cal.2d 509, 261 P.2d 235, 237, as it relates to § 70 of the California Probate Code (similar in import to I.C. § 14–312), as follows:

"The policy of law which underlies this section has been declared to be the social disfavor toward a testator's failure to provide for a surviving spouse. * * *

* * * * *

" * * * And, although a testator need not make provision for such a spouse, he is required to bear in mind the possibility of a subsequent marriage and the serious changes in domestic relations resulting therefrom. Construing a similar statute, the supreme court of the State of Georgia has said: 'The object of the provision is to secure a specific moral influence upon the testamentary act,—the moral influence

of having before the mind a contingent event so momentous as marriage * * *, and so deserving of consideration in framing a testamentary scheme.' "

The answer to the next question, when testator executed the codicil, is desirable only from the standpoint of having the findings reflect the true date.

While the codicil is dated July 5, 1949, the evidence shows that testator's attorney prepared it from the document written in testator's own handwriting dated July 31, 1949, Exhibit L, and when prepared, plaintiff took the codicil to testator at the hospital where he executed it August 5, 1949. The probate court so found.

There is nothing in the record, other than a typographical error at the most, to support the finding of the district court of July 5, 1949, as the date of testator's execution of the codicil.

■ We therefore hold that testator executed the codicil August 5, 1949.

The next question, whether the district court erred in admitting in evidence the document, Exhibit L, must be answered in the light of certain rules relating to the interpretation of wills.

"The word 'will' includes codicils." I.C. § 73–114.

■ In interpreting testamentary writings the intention of the testator is to be ascertained and given effect where possible and lawful. In re Heazle's Estate, 72 Idaho 307, 240 P.2d 821, 823, wherein appears the following statement of the rule taken from Central Trust Co. of Cincinnati v. Lamb, 74 Ohio App. 299, 58 N.E.2d 785, at page 788:

"'* * * the cardinal rule of interpretation of a will is to ascertain and give effect to the intention of the testator. And to that end all rules of construction are to be followed only as they assist in determining that intention, and no rule, however sanctioned by usage is to be applied to thwart that intention. * * *' "

See also Ohms v. Church of the Nazarene, 64 Idaho 262, 130 P.2d 679; 95 C.J.S. Wills § 590, p. 730; 57 Am.Jur., Wills, § 1133, p. 726.

■ In 95 C.J.S. Wills § 636b, p. 916, the further rule of construction is stated:

"Where the language of a will is doubtful or ambiguous, parol or extrinsic evidence may be admitted for the purpose of assisting the court in ascertaining its meaning."

The next question raised by appellants, is whether the codicil revoked the general bequests to Methodist Church organizations, Cass and Stillwell.

■ Testator's execution of the codicil operated as a revival of his original will,

rendered invalid by his marriage, the general rule being, that an instrument invalid as a will may be revived and validated by republication accomplished by the execution of a valid codicil. In re Berger's Estate, 198 Cal. 103, 243 P. 862; Hurley v. Blankinship, 313 Ky. 49, 229 S.W.2d 963, 21 A.L.R.2d 817; Warren v. Sanders, Ky., 287 S.W.2d 146; Florey v. Meeker, 194 Or. 257, 240 P.2d 1177; Johnson v. Johnson, Okl., 279 P.2d 928; 95 C.J.S. Wills § 298, p. 88 and § 300, p. 90. The republished will and the codicil are regarded as one instrument speaking from the date of the codicil. In re Pence's Estate, 117 Cal.App. 323, 4 P.2d 202; In re Riddel's Estate, 104 Cal.App.2d 162, 230 P.2d 863; Waterbury v. Munn, 159 Fla. 754, 32 So.2d 603, 174 A.L.R. 620; In re Kaiser's Estate, 150 Neb. 295, 34 N.W.2d 366; Boyd v. Frost Nat. Bank, 145 Tex. 206, 196 S.W.2d 497, 168 A.L.R. 1326; Hinson v. Hinson, 154 Tex. 561, 280 S.W.2d 731; 95 C.J.S. Wills §§ 302 and 303, p. 95.

The codicil revived and validated certain provisions of the original will, i. e., the provision directing payment of the expenses of decedent's last sickness, funeral, and of administration of the estate, and decedent's debts; the residuary clause, directing that testator's son, Edgar L. White, Jr., inherit the residue of decedent's estate; and the provision directing that probate of the estate be not concluded nor distribution thereof made until five years after testator's demise.

■ The codicil, since testator therein named his wife as executrix, did not revive the designation in the original will of Mr. LaHue as executor, nor the provisions therein relating to his powers and duties.

■ The codicil initially revived the charitable bequests to the Methodist Church organizations, but could not validate them; for those bequests, to benevolent or charitable societies or corporations, were not made in this instance "by will duly executed at least thirty days before the decease of the testator," the revoked will having been revived by execution of the codicil August 5, 1949, and the death of testator having occurred August 6, 1949. I.C. § 14–326; In re Coleman's Estate, 66 Idaho 567, 163 P.2d 847.

Appellants Methodist Church organizations urge, that notwithstanding testator's republication of his will and the fact that the will and codicil speak from the date of the codicil, nevertheless the codicil executed within the statutory period of 30 days will not operate to avoid the gifts or charities in the original will executed beyond the statutory period, in the absence of language in the codicil to indicate that the codicil shall so operate. Appellant cites in support thereof In re Darlington's Estate, 289 Pa. 297, 137 A. 268; In re McCauley's Estate, 138 Cal. 432, 71 P. 512; In re

Pence's Estate, 117 Cal.App. 323, 4 P.2d 202; In re McDole's Estate, 215 Cal. 328, 10 P.2d 75; In re Herbert's Estate, 131 Cal. App.2d 666, 281 P.2d 57: 68 C.J., Wills, § 157; 94 C.J.S. Wills § 109b. None of such authorities involve a *revoked* will subsequently validated as of the date of the codicil. Each involved a codicil to an existing will which, as pointed out In re McCauley's Estate, supra [138 Cal. 432, 71 P. 514], "remains the will of the testator until revoked," the statute, California Civ.Code § 1287, now California Prob.Code § 25, having the effect only "to *republish* the will, as modified by the codicil." (Emphasis supplied.) ·

The codicil also initially revived the bequests to Beulah Cass and Edna Stillwell.

The codicil, after republishing and reviving the provisions of the revoked will then provides:

"And I now revoke those certain provisions of my said Last Will and Testament dated May 19, 1948, insofar as they conflict with the terms and provisions of this Codicil."

Again, we note that testator, by his original will, directed that the general bequests, totaling $20,000, be paid in five equal annual installments commencing at the end of the first year after testator's death.

Testator further directed that the probate of his estate be not concluded until at the end of five years following demise and during said time Mr. LaHue, the named executor, to have full supervision and control of testator's estate, to maintain and lease the real property, collect the rents and do all things necessary and appropriate in the premises. At the end of the five-year period the executor was directed to conclude the administration of the estate and cause the remaining assets to be distributed to testator's son Edgar L. White, Jr., as residuary devisee and legatee.

Testator, at the time he executed his original will, May 19, 1948, owned two parcels of land, i. e., 80 acres and 113½ acres, totaling 193½ acres.

Then came testator's marriage to Winnifred White, February 5, 1949, and thereafter testator's gifts to his wife of the 80 acre tract of land and certain personalty.

Next, testator executed the codicil whereby he granted to his wife the use of the residence on the 113½ acre home place together with all rents to accrue from said land for the period of five years following testator's demise; also such of his personalty as she may select. Testator then effected a grant of the 113½ acres to his son Edgar L. White, Jr., to become absolute at the end of five years after testator's death.

The question arises, in view of the provisions of the codicil as to how payment of any of the general bequests could have been accomplished during the period of five

years following testator's demise, without selling or encumbering the real property.

Clearly, testator intended by his original will of May 19, 1948, that the general bequests be paid by using the income of the land to the extent of $2,500 a year to the Methodist Church organizations, and $1,500 a year to Cass and Stillwell, totaling $4,000, for the five year period following demise.

The district court in its Findings of Fact (XII and IX) found that the farm income from the 113½ acre home place, and the 80 acres deeded by testator to his wife, for the years 1949–1955, was as follows:

| Year | 113-½ acres | 80 acres | Total |
|------|-------------|----------|-------|
| 1949 | $ 5,809.94 | $( –164.17) | $ 5,646.78 |
| 1950 | 6,047.37 | 4,243.48 | 10,470.85 |
| 1951 | 3,574.01 | 3,054.37 | 6,628.38 |
| 1952 | 3,386.05 | 7,692.50 | 11,078.55 |
| 1953 | 1,626.49 | 4,254.13 | 5,880.62 |
| 1954 | 5,231.75 | 3,595.62 | 8,827.40 |
| 1955 | 4,143.85 | 4,282.73 | 8,426.58 |

Inspection of testator's original will of May 19, 1948, indicated the testator's intention to subordinate all provisions thereof to the directive, that his executor maintain and manage the real property "and do and perform such other things as in his judgment seem proper and expedient, including of course, the leasing of the real property of said estate and collecting the rents accruing therefrom."

A review of the record shows that testator did not have sufficient personal property to pay the $20,000 general bequests at the time he executed the original will,

which is explanatory of his directive that those bequests be paid in annual installments over the period of five years following demise. Testator directed the executor to manage the assets of the estate for those same five years, lease the real property as testator's only income producing assets, and collect the rents therefrom. The actual income produced by the real property during those five years as found by the district court appears sufficient to have permitted payment of those bequests and otherwise to have managed the estate, during such period of five years. Testator's later conveyance of the 80 acres as a gift to his wife, and his granting to her the income from the 113½ acre home place during the five years following demise, rendered impossible of performance, payment in annual installments or otherwise of the general bequests, either to the Methodist Church organizations on the one hand, or to Cass and Stillwell on the other hand, during said period of five years.

The impossibility of payment of the general bequests is also obvious from Exhibit P, the account of the executrix, covering the period from August 6, 1949 to November 24, 1956. The account excludes share crop incomes from the 113½ acre home place and attendant expenses for the five years 1949–1953, inclusive, because of Winnifred White's entitlement to the incomes during those five years, as directed by the codicil. The account reveals income of

$6,965.18 and expenditures of $8,560.31, or an excess of expenditures over the income of $1,595.13 during the five year period. The account shows a balance on hand of $3,361.42 as of November 24, 1956, though admittedly there are expenses of administration yet to be paid.

Exhibit L fulfills all the requirements of an olographic will inasmuch as it is entirely written, dated and signed by the hand of the testator, and discloses testamentary intent. I.C. § 14–304; In re Hengy's Estate, 53 Idaho 515, 26 P.2d 178. It reads as follows:

"Twin Falls, Ida. July 31st 1949
"To Whom it May Concern:
"This is to certify that I gave my 'Cad' car to my wife, Winnifred White as a wedding gift, and that it is her personal property, also the 'West Wood' House trailer is her property together with my camera equipment and such other personal effects as she may desire, also she shall have rent free use of Residence where she now resides for 5 years from date of my death, together with income from the farm.
"After five years from date of my death the home place of 113½ acres shall become property of my son.
"My wife is to serve as Executrix without bond.
"Edgar L. White

Edgar L. White"

Testator, by this instrument, with the law supplying the requisite authority for payment of decedent's expenses of last sickness, funeral, and administration of the estate, I.C. § 15–1127, and decedent's debts, I.C. § 15–1124, directed the disposition of all his property then owned, both real and personal; no reference to the original will appears necessary for purposes either of interpretation or ascertaining testator's intentions. The Exhibit itself clearly shows testator's intention to nullify the provisions of his previous will particularly relating to the general bequests and all reference to Mr. LaHue, executor, and his powers and duties therein provided.

Exhibit L sheds a great deal of light upon testator's codicil intendments. The instruments when considered together for interpretative purposes point to the one conclusion, and we so hold, that testator, by his codicil, intended to and he did revoke the general bequests contained in his original will of May 19, 1948, to appellants Methodist Church organizations, Cass and Stillwell.

The remaining question is whether respondent executrix must pay to the State any tax imposed or computed upon the value of decedent's estate transferred, before she may be permitted to distribute and close the estate.

Idaho Code, Title 14, c. 4, "The Transfer and Inheritance Tax Act," provides that

the transfer tax "shall be due and payable at the death of decedent"; that if the taxes are paid within one year no interest shall be charged but if not so paid, interest shall be charged at the rate of 10% per annum and collected from the time the tax accrues (death of decedent), but if paid within six months from the time of accrual, a 5% discount shall be deducted from the amount of the tax; and if the tax be not paid within one year from decedent's death, bond shall be furnished conditioned for the payment of the tax and interest. I.C. § 14-411. The administrator, executor or trustee shall deduct the tax from any property to be distributed. I.C. § 14-413. Such officer shall not be entitled to credit for the amount of the tax, nor be discharged from liability for payment thereof, nor shall the estate be distributed, unless he produce and file with the probate court a receipt sealed and countersigned by the tax collector. I.C. § 14-414 and § 15-1405. The tax shall remain a lien on the property transferred, or upon the proceeds if the property be sold at probate sale, until paid. I.C. § 14-405.

The question narrows down to the interpretation of I.C. § 14-405, which provides in effect that the limitation of time for commencement of proceedings for levying, appraising, assessing, determining or enforcing collection of the transfer tax shall be five years from the date of application to a probate court for letters testamentary or administration, or five years from the date of expiration of extension of time granted for payment of the tax. Such section of the statute then provides:

"Unless sued for within the time hereinabove provided [5 years] after they are due and legally demandable, such taxes or any taxes accruing under the provisions hereof [transfer and inheritance tax act] shall cease to be a lien against any bona fide purchaser of said property."

Elsewhere in the Act, I.C. § 14-426, full power and authority is imposed upon the tax collector, substituted for the commissioner of finance, I.C. § 63-3403(b), to enforce all the provisions of the Act, including "to bring any suit in any court of competent jurisdiction, necessary for such administration and enforcement." The tax collector is furnished copies of the requisite instruments as soon as filed, relating to all estates. I.C. § 14-424.

No extension of time from and after August 31, 1949, when respondent made application to the Twin Falls County probate court for letters testamentary appears to have been granted either by the tax collector, the probate court, or otherwise, for payment of any transfer taxes. Respondent commenced her action for declaratory judgment and interpretation relating to the estate matters June 17, 1955, more than 5 years after she made application to the

probate court for letters testamentary; she made the State a party defendant, by reason of its ostensible claim for transfer taxes, and the State on relation of its tax collector defends against respondent's contention that she is entitled to relief from payment of any such taxes as incident to decedent's estate.

The transfer taxes were not sued for within the five years after becoming due and legally demandable, i. e., five years from August 31, 1949, the date respondent applied for letters testamentary, unless commencement of the probate proceedings be construed as an action for recovery of the taxes, commenced by and on behalf of the state; the tax collector so contends.

The State's contention is answered by In re Batt's Estate, 220 Ind. 193, 41 N.E.2d 365, 367, 139 A.L.R. 1391, a case wherein the state contended that inheritance taxes were collectable in an estate proceeding which had been pending more than 10 years after decedent's death, though the statute (Indiana Acts 1937, c. 159, § 1) conclusively presumed no inheritance tax to be due if no proceeding had been taken to determine the tax within 10 years after decedent's death. The Court said:

"It is urged that it was the duty of the petitioner as an interested party to make application to have the tax question determined; that she is the agent of the state, and that she is estopped from asking for the relief prayed. The administratrix is not the agent of the state for the purpose of collecting the tax; * * *. If all interested parties were estopped to assert the limiting statute until they had made application to have the tax fixed and adjusted, the statute would be a nullity. We think it was not so intended."

In approaching the question of the statute of limitations we quote the fundamental rule set forth in Hagan v. Young, 64 Idaho 318, 132 P.2d 140, 141, as follows:

"We recognize the fundamental rule, that statutes of limitations do not run against the state unless the legislature has specifically provided that they may do so. Dietemann v. People, 76 Colo. 378, 232 P. 676; In re Batt's Estate [220 Ind. 193], 41 N.E.2d 365, 139 A.L. R. 1391 and note. Here the statute of limitations applied to the state as well as to individual and private business. Sec. 14–404, I.C.A.; State ex rel. Gallet v. Naylor, 50 Idaho 113, 294 P. 333; C.S., Sec. 3378." [Sec. 14–404, I.C.A. above cited now is I.C. § 14–405.]

The legislative intent, that the 5-year limitation of I.C. § 14–405 shall run against the state, appears clear both, from I.C. § 14–426 which empowers the tax collector to administer and enforce the provisions of the Transfer and Inheritance Tax Act including the bringing of any action neces-

sary for such administration and enforcement, and from I.C. § 14–405 which contemplates the bringing of such requisite action within such period of 5 years. And as stated in Dietemann v. People, 76 Colo. 378, 232 P. 676, 678, in so construing the legislative intent of a similar statute, "the tax belongs to the state only."

Respondent's contention is that I.C. § 14–405 is a general and not a restricted limitation. The position of the tax collector, however, is that while I.C. § 14–405 may be a limitation, it is qualified or restricted in the sense that if no action or proceeding has been commenced for the collection of the transfer tax within the limited time therein provided (and commencement of a proceeding for probate of a decedent's estate cannot be construed as the commencement of such a tax collection proceeding), nevertheless the lien of the tax continues against the property as well as does the personal liability of the executrix for payment of the tax, and that the tax ceases to be a lien only as against any bona fide purchaser of the property.

 Such position is fallacious for the reason that there is a distinction between liability for payment of the debt, and the lien to secure its payment. Though a statute of limitation does not extinguish the debt nor the lien securing the debt, it bars the remedy for collection of the debt, and thus extinguishes the personal liability for

payment of the debt. The lien becomes ineffectual if and when the remedy, for the collection of the debt which the lien secures, becomes inoperative. These principles are well recognized in our jurisdiction.

Lemhi County ex rel. Gilbreath v. Boise Live Stock Loan Co., 47 Idaho 712, 278 P. 214, 216, was an action brought by the county for possession of live stock assessed for previous years, or in the alternative for personal judgment in the amount of taxes, penalty and interest. The statute C.S. § 3268 (now I.C. § 63–1206) provided that all taxes levied under the provisions of chapter 144 (now I.C. Title 63, chapter 12) shall be a lien upon the personal property so assessed, and C.S. § 3097 (now I.C. § 63–102) provided that all real and personal property taxes levied and assessed pursuant to the provisions of said chapter also shall be a lien upon the property assessed and upon other property of the owner, and that the lien " 'shall only be discharged by the payment, cancellation or rebate of the taxes as provided in this chapter.' " The Live Stock Company contended that the statute of limitation, C.S. § 6611 (now I.C. § 5–218), providing for commencement within three years of an action upon a liability created by statute other than a penalty or forfeiture, barred the action. The Court, after pointing to C.S. § 6618 (now I.C. § 5–225) providing that the limitations apply to actions brought in the name of or for the benefit of the state in the same manner as actions

by private persons and therefore to counties, announced the following rule:

> "The language of C.S., § 3097, to the effect that the tax lien 'shall only be discharged by the payment, cancellation, or rebate of the taxes,' does not operate to take its enforcement out of the general statutes of limitation. Statutes of limitation are statutes of repose so far as civil actions are concerned (State v. Steensland, 33 Idaho 529, 195 P. 1080, 13 A.L.R. 1442), and do not extinguish the lien. They apply to the remedy, and cut off the right of enforcement, although the lien still exists. Mendini v. Milner [47 Idaho 439], 276 P. 313.
>
> \* \* \* \* \* \*
>
> "Fundamentally, this is a suit to collect a tax, \* \* \* and, unless facts are plead showing the tolling of the statute, the action is barred; more than three years having elapsed since the tax levied \* \* \* became delinquent."

See also State ex rel. Gallet v. Naylor, 50 Idaho 113, 294 P. 333.

 It is thus clear that I.C. § 14–405 is a general statute of limitation since it contemplates the commencement of appropriate action by and on behalf of the State within five years from the time the transfer tax becomes due and legally demandable, or from the time extended for payment thereof. The clause providing that the tax, unless so sued for, shall cease to be a lien against any bona fide purchaser of said property, constitutes *the effect* of the failure so to sue; and, though the tax continues to be a lien against the property, except as against a bona fide purchaser, the statute bars any action seeking to enforce the personal liability of decedent's personal representative or of the estate, for collection of the lien-secured debt. The lien as against the property thus becomes ineffectual since personal liability for payment of the debt becomes unenforceable by reason of the bar of the statute of limitations.

In Dietemann v. People, 76 Colo. 378, 232 P. 676, 677, the essential portion of section 41 of the Colorado acts of 1902 is quoted as follows:

> " 'The lien of the inheritance tax provided herein shall continue until the said tax is settled and satisfied: Provided, that said lien shall be limited to the property chargeable therewith; and provided, further, that all inheritance taxes shall be sued for within five years after they are due and legally demandable; otherwise they shall be presumed to have been paid, and such lien shall be removed.' "

The Colorado Court construed the effect of such section 41 as follows:

> "The language of section 41, 'all inheritance taxes shall be sued for within

five years after they are due and legally demandable,' of itself constitutes a general limitation, and operates as a bar to the institution of all suits to collect them brought after the lapse of 5 years. The additional words, 'otherwise they shall be presumed to have been paid, and such lien shall be removed,' were not essential to the creation of a limitation statute. They are nothing more than a legislative declaration of the legal effect of the preceding creative words, which, without the explanation of the Legislature, the courts would have assigned to the first above quotation. The purpose * *· * in adding the last quoted words, was to make clear the legislative intention, namely: That the neglect of the state to bring suit to collect a tax after 5 years from the time it was due and legally demandable raises a conclusive presumption of payment, and, as a necessary corollary, the lien is removed, not only as against a purchaser, as under the Pennsylvania and Illinois statutes, but also the state's lien was lost because it was merely an incident of the tax which the law conclusively presumed had been paid."

See also Miller v. Wolfe, 115 Tenn. 234, 89 S.W. 398, construing Section 19 of Tennessee's inheritance tax law, Acts 1893, c. 174, reading:

" 'The lien of the collateral inheritance [tax] shall continue until the tax is settled and satisfied: Provided, that the said lien shall be limited to the property chargeable therewith; and provided further, that all collateral inheritance tax[es] shall be sued for within five years after they are due and legally demandable, otherwise they shall be presumed to have been paid, and cease to be a lien as against any purchaser of real estate.' "

The state insisted that the last clause of the statute confined its limitation to purchasers of real property from the person liable for the tax. The Tennessee Court, answering such contention, stated:

" * * * this is too narrow a construction, * * * the purpose of the Legislature, on the contrary, was to establish a general limitation of five years in this class of cases. The language used is very broad: 'All collateral inheritance taxes shall be sued for within five years after they are due and demandable, otherwise they shall be presumed to have been paid.' The subsequent clause referring to the lien, which is a mere incident of the tax, could not be properly construed to cut down this broad language."

But see In re Cullen's Estate, 142 Pa. 18, 21 A. 781, and Hanberg v. Morgan, 263 Ill. 616, 105 N.E. 720, holding contra under similar statutes, which cases are analyzed in the well reasoned Colorado case of Dietemann v. People, supra.

In re Batt's Estate, 220 Ind. 193, 41 N.E. 2d 365, 367, 139 A.L.R. 1391, the Court construed Section 1 of Indiana's 1937 Acts, c. 159, which provided that a transfer tax imposed shall be a lien upon the property transferred until paid, and that the transferee, the administrator, executor or trustee of every estate so transferred shall be liable for the payment of such tax (I.C. § 14–405, same provision of liability), provided that if no proceeding be taken to determine the inheritance tax on decedent's property within ten years after his death "it shall be conclusively presumed that no inheritance tax is due and all property of decedent shall be free and clear therefrom."

The Indiana Court after analyzing the cases supra decided in Pennsylvania, Illinois, Tennessee and Colorado, decided that the legislative intent indicated the Indiana statute to be "a statute of limitation and repose. It is in effect a time limitation on the prosecution of proceedings to collect inheritance taxes." See also Chambers v. Gallagher, 177 Cal. 704, 171 P. 931; Chambers v. Gibson, 178 Cal. 416, 173 P. 752; State v. Evans, 143 Wash. 449, 255 P. 1035, 53 A.L.R. 564; State Tax Commission v. Spanish Fork, 99 Utah 177, 100 P.2d 575, 131 A.L.R. 816; Griffith Co. v. Kelly, 52 Cal. App.2d 739, 126 P.2d 909; People v. Universal Film Exchanges, 34 Cal.2d 649, 213 P.2d 697; City of Los Angeles v. Belridge Oil Co., 42 Cal.2d 823, 271 P.2d 5; Ritcher v. Commonwealth, 180 Ky. 4, 201 S.W.

456; Annotation 131 A.L.R. 822; Annotation 139 A.L.R. 1397; 85 C.J.S. Taxation § 1225, p. 1116, as bearing upon the question of limitation involved herein.

We are aware of the rule that the plea of the bar of the statute of limitation must be raised by proper pleading, or that it is deemed waived. McLeod v. Rogers, 28 Idaho 412, 154 P. 970; Last Chance Ditch Co. v. Sawyer, 35 Idaho 61, 204 P. 654; Aker v. Coleman, 60 Idaho 118, 88 P.2d 869. Respondent in this declaratory judgment action seeks interpretation of decedent's will and codicil and guidance relative to the rights, duties and responsibilities, in relation to decedent's estate, of the parties interested therein and, in so doing, has raised the question whether the statute of limitations has barred the right of the State to exact payment of transfer taxes from her as executrix in the matter of decedent's estate. We therefore hold that she has properly raised this question under the declaratory judgment statute, I.C. Title 10, c. 12, and particularly I.C. § 10–1201, and is entitled to a ruling thereon.

The judgment of the trial court is reversed insofar as it adjudges the general bequests contained in the original will of Edgar L. White, deceased, to be valid and not revoked or adeemed by the terms of the codicil; also reversed insofar as it adjudges transfer taxes to be due and payable to the State of Idaho from the estate of Edgar L.

White, deceased, and requiring the same to be paid before the executrix will be permitted to distribute and close the estate; otherwise, the judgment is affirmed.

The cause is remanded for further proceedings consistent with the views expressed in this opinion.

No costs allowed.

PORTER, C. J., and TAYLOR and McQUADE, JJ., concur.

KEETON, C. J., sat at the hearing but retired prior to decision.