551 P.2d 1339

**In the Matter of the ESTATE of Arthur L. WEBBER, Deceased.**

**Jessie Nail SMITH, Petitioner-Appellant,**

v.

**Ruth E. WEBBER, Personal Representative of the Estate of Arthur L. Webber, Contestant-Respondent.**

**No. 11849.**

Supreme Court of Idaho.

July 13, 1976.

J. Charles Blanton of Moffatt, Thomas, Barrett & Blanton, Boise, for petitioner-appellant.

Paul G. Eimers, Grangeville, Reed Clements of Clements & Clements, Lewiston, for contestant-respondent.

McFADDEN, Chief Justice.

Arthur L. Webber died October 13, 1971. His widow, contestant-respondent, Ruth E. Webber, petitioned for letters of administration alleging that her husband had died intestate. Petitioner-appellant, Jessie Nail Smith, petitioned the court to admit to probate as a holographic will a greeting card sent to her by Arthur. After a court trial, the district court entered judgment denying probate to the will and Jessie Nail Smith appealed. The primary issue raised by this appeal is whether there was sufficient competent evidence to support the district court's finding that Arthur Webber lacked the requisite testamentary intent when he wrote the message contained in the greeting card. This court affirms the district court's finding and the judgment entered.

The card which the petitioner sought to admit to probate was a greeting card which Arthur had sent to her. On the card's front page was a printed verse:

"Like Bees without HONEY

"A Dove with no COO  .   .   .

"A Rose with no FRAGRANCE"
This verse was concluded on the inside pages of the card—

"That's Me Without You!"

On the same inside pages, these words, handwritten in pencil, appeared:

"For,

"Mrs. Jessie Nail. S."

On the back page of the card, again handwritten in pencil, were these words:

"Aug 1, 1969

"I bid this world goodbye

"I leave my land to you,

[s] Arthur Webber"

By her petition, the petitioner asserts that that this card is a holographic will duly executed with testamentary intent by which Arthur intended to devise all the real property which he owned to the petitioner upon his death. The district court ruled that the card was not a valid holographic will as required by I.C. § 14–304 (repealed S.L. 1971, Ch. 111, § 3), finding that the purported will was not wholly in the handwriting of the decedent and that the decedent did not execute the writing with testamentary intent.

On appeal, the petitioner makes numerous assignments of error, some of which are relevant to the question of whether the district court erred in its ruling that Arthur Webber did not execute the writing with testamentary intent. Because of our disposition of the appeal, this opinion will focus upon the issue of testamentary intent.

The ultimate resolution of this appeal turns upon the evidence presented to the district court. However, before these facts can be discussed, the legal principles applicable to the issue of testamentary intent expressed in a holographic will must be reviewed. I.C. § 14–304 provides:

"Olographic wills.—An olographic will is one that is entirely written, dated and signed by the hand of the testator or testatrix (who may be either married or unmarried). It is subject to no other form, and may be made in or out of this state and need not be witnessed."

Repealed, S.L.1971, Ch. 111, § 3.

The district court found I.C. § 14–304 to be applicable to the case at bar because the date of the purported will, the date of decedent's death, and the date of the petition for probate of the will were all prior to the effective date of S.L.1971, Ch. 111, § 3, which repealed I.C. § 14–304. This finding was not assigned as error.

This court has held that I.C. § 14–304 requires that a holographic will must be entirely written, dated and signed with testamentary intent by the hand of the testator. *White v. Conference Claimants Endowment Com'n,* 81 Idaho 17, 336 P.2d 674 (1959); *Estate of Hengy,* 53 Idaho 515, 26 P.2d 178 (1933). The test of the testamentary character of an instrument "is not the testator's realization that it is a will, but his intention to create a revocable disposition of his property, to accrue and take effect only upon his death, and passing no present interest". *Estate of Hengy,* 53 Idaho 515, 519, 26 P.2d 178, 179 (1933), quoting *Nichols v. Emery,* 109 Cal. 323, 41 P. 1089, 1091 (1895). See, 1 Page on Wills, § 5.6 (1960). The question of testamentary intent is a question of fact for the trier of fact to be determined according to the particular facts of the case. See, *In re Goan's Estate,* 83 Idaho 568, 366 P.2d 831 (1961); *In re Heazle's Estate,* 74 Idaho 72, 257 P.2d 556 (1953). If the instrument is ambiguous on its face as to an expression of testamentary intent, then extrinsic evidence of the maker's intent is admissible on the question of testamentary intent. 1 Page on Wills, § 5.16 (1960). See, *White v. Conference Claimants Endowment Com'n,* 81 Idaho 17, 336 P.2d 674 (1959). See also, *In Re Estate of Cook,* 96 Idaho 48, 524 P.2d 176 (1974).

At this lengthy trial, considerable evidence was introduced on the question of Arthur's testamentary intent. Prior to the deaths of his parents, Arthur, who had never married at this time, lived and worked upon the family farm which was located near Grangeville. His mother died in 1955 and his father had predeceased her. Upon his mother's death, Arthur received the bulk of the approximately 1000 acre family farm. However, his sister, Mary Graham,

received a joint interest with Arthur in approximately 100 acres of the farm.

Following his mother's death, Arthur was very lonely and sought the company of the petitioner, Jessie Nail Smith, who was not married at that time. During the period from March, 1955, to the summer of 1957, Arthur frequently visited the petitioner who was then living in the town of Grangeville; he saw her as frequently as two or three times a week. While he was seeing her, Arthur gave Jessie several presents of sentimental value to him, including two rings, a wall plaque, an antique wood stove, cuff links, and quilts. He often suggested marriage to the petitioner but the petitioner did not ever agree to marry Arthur. She suggested that Arthur should see the contestant, Ruth Webber, as Ruth wanted to get married. Finally, in the summer of 1957, Jessie stopped seeing Arthur.

Arthur began seeing Ruth in the fall of 1957, and they were married February 14, 1958. Also, in the fall of 1958, Jessie married her present husband, Justin Smith, and moved to his ranch on the isolated Joseph Plains some fifty miles distant from Grangeville.

Jessie testified that after her marriage to Justin Smith, she saw Arthur on four occasions prior to his death in 1971. The first time was a chance meeting on the streets of Grangeville; during this visit, Arthur invited Jessie out to his farm to see the farm house which had been remodeled subsequent to his marriage. The second meeting occurred when Jessie and her husband visited the Webber farm upon Arthur's invitation extended earlier. On this occasion they toured the newly remodeled house.

The third meeting was again a chance meeting on the streets of Grangeville in the mid-1960's. Jessie testified that Arthur said that "an old man was following him around with a knife trying to put a slit under his arm." This colloquialism was an apparent reference to the undertaker. She said that Arthur asked her if she would help take care of him if anything should happen to him and she replied that she would do what she could but that she could not do much as she lived on the Joseph Plains, fifty miles from Grangeville. According to Jessie's testimony, Arthur told her that she was the only one whom he could trust and upon whom he could depend.

The last meeting occurred at Arthur's ranchhouse. Arthur was bedridden by his illness and Jessie helped Ruth to move Arthur from the floor where he had fallen to a couch. Jessie testified that while they were moving Arthur, he said, "Well, this is kind of funny. I got my arms around both my girls at the same time."

Also, after her marriage to Justin Smith, Jessie received three greeting cards from Arthur. When she was hospitalized in Cottonwood, she received a get-well card from the decedent which he had signed "Arthur". She also received from Arthur an Easter card upon which he had written, "Absence seem to make the heart grow fonder[,] with love[,] your True Boy Friend". She testified that she probably received this card about 1966, three or four years prior to her receipt of the purported will.

The third card she received was the greeting card purported to be his will. This card was dated August 1, 1969. Jessie testified that she did not acknowledge to Arthur receipt of the card. The record is silent as to any communication by Arthur to Jessie regarding the significance of the card.

Several months after Arthur's marriage to Ruth, the couple moved to Arthur's ranch and the couple resided there until his death in 1971, at the age of 76 years.

Both Ruth Webber and Paul Eimers, an attorney, testified that Arthur, while conferring with Eimers on other legal matters, asked about a will and intestate succession and that Eimers explained the law of intestate succession to Arthur. Both parties testified that Arthur replied to the effect that he did not think that he needed a will.

Testimony was also presented that on several occasions Arthur said that he did not have a will and that he intended the farm to be given to Ruth upon his death, apparently under the laws of intestate succession. Ruth and Arthur's sister, Mary Graham, both testified that on August 5, 1971, Arthur told them that he did not have a will. Ruth also testified that in the spring of 1969, Arthur told her and Marion Vanderwall, a neighbor and lessee of the farm property, that he did not have a will and that everything was to go to Ruth. This conversation occurred when Vanderwall delivered "presto-logs" to the farm house. Marion Vanderwall, and Terry and Randy Vanderwall, Marion's sons, testified that Arthur told them in the spring of 1969 that he did not have a will and that everything was to go to Ruth. On another occasion, according to the testimony of Ruth, Marion, Randy, and Terry Vanderwall, Arthur again said, in November or December, 1969, that he did not have a will and that everything was to go to Ruth. Marion Vanderwall also testified that Arthur told him when he was hospitalized in August, 1971, that Ruth was to get everything as he did not have a will.

Ansel Beardemphl, Arthur's neighbor, testified that, about August 15, 1969, Arthur said, " * * * I shall leave it [the farm] to Ruth because she is not so sentimental about it and will be much wiser with it than I ever was". Also, Charles Stegner, Arthur's friend and business associate, testified that when he attempted to discuss estate planning with Arthur in February, 1971, Arthur told him that his estate would be settled under the inheritance laws of the State of Idaho.

Thus, the trier of fact was presented with conflicting evidence as to Arthur's testamentary intent when he executed the greeting card purported to be his will. These conflicts in the evidence were resolved by the trier of fact, the district court, in favor of the contestant, Ruth Webber. On appeal, this court must view the evidence presented in a light most fa-

vorable to the respondent, Ruth Webber. *Glenn Dick Equip. Co. v. Galey Const. Co., Inc.,* 97 Idaho 216, 541 P.2d 1184 (1975). We must affirm the district court's findings of facts if they are supported by substantial and competent, although conflicting, testimony and are not clearly erroneous. I.R.C.P. 52(a). *Gneiting v. Clement,* 96 Idaho 348, 528 P.2d 1283 (1974). It is the conclusion of this court, in light of the evidence presented, that the finding by the district court that Arthur Webber did not execute the greeting card alleged to be his will with testamentary intent must be affirmed. I.R.C.P. 52(a). The greeting card must be denied probate as a holographic will because Arthur Webber did not write the card with testamentary intent. I.C. § 14–304 (repealed S.L.1971, Ch. 111, § 3). *White v. Conference Claimants Endowment Com'n,* 81 Idaho 17, 336 P.2d 674 (1959).

The petitioner, Jessie Nail Smith, also assigned as error the admission of the testimony of Ansel Beardemphl. Jessie asserts that, because Ruth Webber failed to list Beardemphl's name as a potential witness in answer to an interrogatory, Beardemphl should not have been allowed to testify. As authority for her argument, the petitioner cites I.R.C.P. 26(e) which requires a party to supplement interrogatories under certain circumstances. However, I.R.C.P. 26(e) was added to the Idaho Rules of Civil Procedure by the 1975 amendments which became effective January 1, 1975. I.R.C.P. 86 (as amended). Since trial in this matter commenced August 5, 1974, the 1975 amendments to the Idaho Rules of Civil Procedure including Rule 26(e) were not applicable to this action. I.R.C.P. 86 (as amended). In any event, assuming that the Idaho Rules of Civil Procedure (as they existed in 1974) established an affirmative duty to supplement interrogatories, the imposition of sanctions by the district court for failure to supplement interrogatories is a matter committed to the discretion of the district court. I.R.C.P. 37 (prior to 1975 amend-

ments). See, *Campbell v. Johnson,* 101 F. Supp. 705 (S.D.N.Y.1951); Wright and Miller, Federal Practice and Procedure, § 2284 (1970). See also, I.R.C.P. 26(e) (as amended); Wright and Miller, supra, § 2050. The district court did not abuse its discretion by admitting the testimony of Ansel Beardemphl.

The judgment denying appellant Jessie Nail Smith's petition for probate of the will and issuance of letters of administration is affirmed. Costs to respondent.

DONALDSON, SHEPARD and BAKES, JJ., and SCOGGIN, District Judge (Retired), concur.