## Application of PETERSON.

No. 5884. Decided April 8, 1937. (66 P. [2d] 1195).

*Mitchell Melich,* of Moab, for appellant.

*F. B. Hammond,* of Price, for respondent.

FOLLAND, Chief Justice.

This is an appeal from a decree and judgment of the district court of Grand county restricting the corporate limits of the Town of Moab by directing segregation of certain lands therefrom. John Peterson, as the sole owner, petitioned for the withdrawal of 52.5 acres of land from the western edge of the corporate limits of the town and alleged that the land is used exclusively for agricultural purposes, is remote from the business and residential sections of the town, is not now and never has been platted, and that it receives no benefit from the town government by being within its limits. The town answered denying the allegations of the petition and alleging that a large part of its corporate area is agricultural in character and if such lands are withdrawn there will be insufficient revenue to support the town government; that the lands of petitioner have received and will receive the advantages of police protection, supervision, and expenditure of moneys on the streets and in the vicinity, accessibility to power and electric light, waterworks, and sewage systems, and the churches, schools, and other social endeavors in the town, and that severance will destroy the symmetry of the town boundaries; that the town has created a bonded indebtedness; and that these lands are subject to their proportionate payment of such debt.

The trial court heard the matter and entered a decree of segregation of a major portion of the land sought to be withdrawn. On appeal to this court the judgment was reversed and the cause remanded for further proceedings. *In re Peterson,* 87 Utah 144, 48 P. (2d) 468. The matter was again heard by the court who made findings of fact and concluded that a portion of the lands sought to be severed from the corporation should be withdrawn and appointed three commissioners to adjust the terms on which severance would be

had. The commissioners reported that the segregated property and the owner should pay nothing further to the town and that the town should pay nothing to the petitioner; that the town retain title to all its assets and assume all its liabilities; that each party be held free from any obligation to the other. The court thereupon approved such recommendation and made and entered its conclusions of law and decree of severance.

From such decree and judgment, the town appeals and urges three grounds for a reversal: (1) That the findings of fact and decree are not supported by the evidence; (2) that the court erred in refusing a jury trial at appellant's request; and (3) failure of the commission appointed by the court to make a charge against petitioner's land for its just proportion of the outstanding bonded indebtedness of the town. We shall discuss these points in their order.

The court found the facts to exist as alleged in the petition and that equity and justice required the severance of a portion of petitioner's lands. We have examined the evidence and believe the findings are fairly supported by a preponderance thereof. The land is located on the western boundary of the town; it is agricultural in character; has never been used for any other purpose than to raise hay and other farm products; it has no residence on it except a small shack erected without permission of the owner. The town has a sewer system and waterworks system, both of which have been constructed and the indebtedness to pay for the same incurred since the petition for severance was filed. The sewer is located at too high an elevation to serve any part of the severed lands. City water is available to the land, but it can be more conveniently served from a privately owned system, the pipe line of which goes through it, and in which the petitioner is a large owner. The nearest water fire hydrant maintained by the town is about a mile distant. The land is about a mile from the business section of the town. There is no paving or sidewalk or other improvements abutting or near the land, although it abuts on an abandoned

state highway which is now being maintained by the town. Power and light services are available, but these are furnished by a private concern and not by the town government. Moab has a population of about 850, but has made no substantial growth in population for many years past and there is no prospect for any immediate increase in the future.

It is argued that to permit the withdrawal of this land will destroy the symmetry of the boundaries of the town. There is no statutory expression on this subject here as there is in some states. *Maxwell* v. *City of Buhl,* 40 Idaho 644, 236 P. 122. While the western boundary will be an indented line instead of a straight line, we see no substantial grounds for the objection for lack of symmetry. It is not as if the segregated lands would leave a hiatus between one part of the town and another or in any way interfere with the development of any park system or other improvement which might add to the beauty of the town or its surroundings. So, also, the mere fact that the town would lose the income derived from the taxation of the segregated lands is not a sufficient reason to defeat the action. *In re Peterson,* supra. That the owners of other agricultural lands may seek to have their lands withdrawn from the corporate limits is a question which can be met in the proper way when that question arises, if it ever does.

We are satisfied the findings of the trial court are sufficiently supported by the evidence and that neither the findings nor the decree should now be disturbed. See note, 62 A. L. R. 1011.

Counsel for the town demanded a trial jury which was denied, and the ruling is assigned as error. The contention is made that this is a law action and the issues must be tried by jury if such demand is made by either party. With this we cannot agree. This is a special proceeding controlled by statute. The creation of a city and the fixing of its boundaries is essentially a legislative and not a judicial function. *Plutus Min. Co.* v. *Orme,* 76 Utah 286, 289 P. 132, 135; 1 McQuillin on Municipal Corps. (2d

Ed.) 416; Const. Utah, art. 11, § 5. Likewise, the changing of the territorial limits of a city or town is a legislative function which the Legislature has exercised by providing a method by which property may be segregated from the corporate limits by a proceeding in court and a finding by the court of designated facts and conditions and the making of a decree of segregation. *Young* v. *Salt Lake City*, 24 Utah 321, 67 P. 1066; *In re Fullmer*, 33 Utah 43, 92 P. 768; 1 McQuillin on Municipal Corps. (2d Ed.) 746; 43 C. J. 119.

In *Plutus Min. Co.* v. *Orme*, supra, this court said:

"In view of the fact, however, that the changing of the territorial limits of a city is primarily a legislative function, courts are bound to confine the exercise of the power conferred upon them by the Legislature within the expressed or necessarily implied language of the act so conferring such power."

When we look to the statute, it is apparent that powers conferred are to be exercised by the court without a jury. There is no mention of a jury or a jury trial in the statute, but merely that, "Issue shall be joined and the cause tried as provided for the trial of civil causes as nearly as may be." Section 15-4-1, R. S. Utah 1933. It will be noted that this language, while broad enough to include both law and equity causes, does not designate either, but merely states that the cause shall be tried as provided for the trial of civil causes as nearly as may be. The next section, 15-4-2, reads:

"If the court finds that the petition was signed * * * and that justice and equity require that such territory or any part thereof should be disconnected * * * it shall appoint three disinterested persons as commissioners," etc.

In section 15-4-3, referring to the commissioners' report, the language is:

"Upon the filing of such report the court shall decree in accordance therewith and with the prayer of the petition, unless for good cause shown the court shall modify the same, or shall reject or set aside the

report and appoint new commissioners and continue the cause for further action to be had thereon."

The language of the statute clearly has reference to the court acting without a jury, rather than referring to a jury trial as known either in law actions or as advisory to the court in equity cases. The rule is applicable that in special proceedings founded on a statute and the unknown to the common law a jury trial need not be granted unless provided for by statute. 64 C. J. 1192; *Stearns Coal & Lumber Co.* v. *Commonwealth,* 167 Ky. 51, 179 S. W. 1080.

The last ground urged by appellant is that the commissioners should have required the segregated lands and the owner thereof to pay some portion of the bonded debt of the town as a condition of withdrawal. The statute does not impose any such obligation as a condition, except where the commission appointed for the purpose of adjusting the terms upon which severance may be had should so report and this finding be approved by the court. The matter is left to the commissioners and to the court to "adjust the terms upon which such part shall be so severed as to any liabilities of such city or town that have accrued during the connection of such part with the corporation, and as to the mutual property rights of the city or town and the territory to be detached." The statute, section 15-4-4, vests in the court the power to impose taxes to be levied on the detached territory in proper cases. The commission decided the lands be severed without imposition of terms and this was approved by the court. Bonds were issued for the construction of a municipal water supply and sewer system after the petition for segregation was filed and also the assets of the town, including water and sewer systems, are worth much more than the entire bonded indebtedness. It will be remembered the city sewer system is valueless to the detached land because of the difference in elevation, and that the water service is not necessary because of the avail-

ability of another system privately owned and in which petitioner is a large owner. In view of all this evidence, the district court did not err or abuse its discretion in approving the report of the commissioners and in making and entering its decree of segregation.

The judgment and decree of the district court of Grand county is affirmed, with costs to respondent.

HANSON, MOFFAT, WOLFE and LARSON, JJ., concur.