Cleve C. CHILD et al., Plaintiffs
and Appellants,

v.

The CITY OF SPANISH FORK, a Municipal
Corporation, Defendant and Respondent.

No. 13960.

Supreme Court of Utah.

July 16, 1975.

Fred G. Biesinger, Salt Lake City, for plaintiffs and appellants.

W. Eugene Hansen and G. Richard Hill, of Hansen & Orton, Salt Lake City, for defendant and respondent.

CROCKETT, Justice:

Plaintiffs, owners of real property in the area known as "Wolf Hollow" adjacent to Spanish Fork in Utah County, sought a declaratory judgment[1] to challenge the City of Spanish Fork's requirement that they transfer irrigation water to the City as a condition to annexation thereto.

On the basis of the pleadings, affidavits and documentary evidence defendant moved for dismissal. The trial court treated it as a motion for summary judgment;[2] and granted the motion. Plaintiffs appeal contending: (1) that the action of the City Council is beyond their powers; and that it is arbitrary and unreasonable; and (2) that it violates plaintiffs' constitutional rights to equal protection of the laws.

During 1972, plaintiffs had presented petitions to the City Council of Spanish Fork City requesting annexation of the "Wolf Hollow" area[3]. On February 15, 1973, in a meeting of the City Council, a resolution was passed approving the annexation, subject to several conditions, one of which was the "transfer of irrigation water to the city," but the exact amount was not then specified.

On April 19, 1973, the proponents of annexation met with the City Council. The transfer of irrigation water was again discussed; and the petitioners were informed that as a condition to annexation they would be required to transfer to the City ownership of shares of Strawberry Valley water representing two acre feet of water for each acre of land to be annexed. It was further explained that this was the policy that had been followed in the past

---

1. Section 78–33–1 et seq., U.C.A.1953.

2. As permitted by Rule 12(b) U.R.C.P.

3. Pursuant to Section 10–3–1, U.C.A.1953.

and that the petitioners would also be required to comply.

These plaintiffs took the position that the resolution of February 15th approving annexation had made it a fact accomplished; and that the condition requiring "transfer of irrigation water", which was not fixed as to amount until the later meeting of April 19th, was invalid for the reasons discussed herein. Upon rejection of their contentions plaintiffs initiated this suit.

■ Certain principles are applicable in considering the plaintiffs' contentions. The first is that a determination of city boundaries is a legislative function, which is to be performed by its governing body.[4] The second logically follows therefrom: that in carrying out that duty the city council is endowed with broad discretion to make decisions and determine policies which it thinks will best fulfill its responsibilities. Consequently, as in all legislative matters, courts are reluctant to interfere therewith; and do so only when the decisions or actions taken are clearly outside the authority of the governing body, or are so wholly unreasonable and unjust that they must be deemed capricious and arbitrary in adversely affecting someone's rights.[5]

In arguing that the City Council exceeded its powers plaintiffs contend that the City can obtain water resources only by the means of purchase, lease or condemnation as set forth in Section 10–7–4, Utah Code Annotated 1953:

The board of commissioners, city council or board of trustees of any city or town may acquire, purchase or lease all or any part of any water, water works system, water supply or property connected therewith, and whenever the governing body of a city or town shall deem it nec-

essary for the public good such city or town may bring condemnation proceedings to acquire the same; . . .

■ The language of that statute, the same as all statutes, should be interpreted and applied in the light of its purpose. In doing so we think it is properly regarded as a statute of authorization and not of limitation or restriction. Its purpose is to provide the governing authority a means of acquiring water. We see nothing therein, either express or implied, to indicate an intent that it should be construed so narrowly as to preclude a city or town from acquiring water by the means recited, or by any other legitimate means such as, for example, gift, assignment, or even by prescriptive use or easement, so long as it is done to fulfill the board's responsibility of acquiring and conserving water supplies for public use.

■ In regard to plaintiffs' charge that the City Council's action was arbitrary and unreasonable, we are in accord with some ideas aptly expressed by the trial court. He called attention to the fact that it was the responsibility of the City Council to consider the total circumstances, including the fact that if new territory is annexed to the City, without making provision for the added burdens, there may result a dilution of municipal services and an increase in tax burdens upon the present citizenry. He expressed what we regard as the sensible view that to require the plaintiffs to convey the amount of water mentioned, in reciprocity for annexation, represented prudence in planning for the City's needs; and he further observed that he was not persuaded that such action was inconsistent with or in excess of the Council's powers, or in any degree unreasonable or arbitrary. To those thoughts we give our approval; and add that the action of the City appears

4. See Bradshaw v. Beaver City, 27 Utah 2d 135, 493 P.2d 643 (1972); In re Town of West Jordan, 7 Utah 2d 391, 326 P.2d 105 (1958); Application of Peterson, 92 Utah 212, 66 P.2d 1195 (1937); Plutus Min. Co. v. Orme, 76 Utah 286, 289 P. 132 (1930); See generally 1 Antieau, Municipal Corporation Law § 1A.01 (1975); 2 McQuillin, Municipal Corporations, § 7.03 (3rd ed. 1966).

5. Ibid.

to be in harmony with the generally recognized rule which permits a city to provide for added or expanded services by imposing reasonable requirements as a condition to the annexation of new territory.[6]

■ We similarly see no merit in plaintiff's claim that the City should avoid imposing this condition on them by issuing bonds and thus have the entire city pay for the acquisition of more water. The City is under no obligation to do so for the plaintiffs' benefit. Its rejoinder is sound and appropriate: that plaintiffs' proposal ignores the numerous problems attendant upon such a procedure, some of which are: consideration of statutory debt limits, expense of a bond election, the provision for paying interest and amortizing the bonds; and the possibility of defeating such proposal at the election anyway.

Plaintiffs' argument as to violation of their constitutional right is that the requirement of conveyance of water to the City treats the plaintiffs, who are a majority of the property owners of Wolf Hollow, as unequals, vis-a-vis the minority of property owners, who do not favor annexation; and also vis-a-vis the present inhabitants of Spanish Fork City, and that therefore, plaintiffs are denied equal protection of the laws.[7]

■ The claim of unequal treatment as compared to the minority property owners in Wolf Hollow is based on the assumption that the requirement of water transfer is to be borne only by the plaintiffs. This assumption is unwarranted. The requirement is imposed not solely upon the plaintiffs, or upon any particular residents of "Wolf Hollow." It simply requires the "transfer of [the specified amount] of irrigation water to the City" by the "owners of property" in the area. This applies equally to all persons within that class of persons whose property will be annexed. The unsoundness of plaintiffs' contention is thus apparent from the mere statement of the proposition.

■ Plaintiffs claim that they are treated unequally as compared to the present City residents is that the latter did not have to convey water in order to enjoy that privilege. Concerning this contention: It is to be realized that there is a substantial difference between the relationship of the present residents to the City, who are enjoying the benefits and bearing the burdens of city government, and the non-city residents, who are attempting to join and obtain the benefit of municipal services. What has been said above about the reasonableness and prudence of planning for expanded services is equally applicable to this argument. The expansion of the City results in additional demands on resources and services, including water. We see nothing inequitable, unjust or unlawful about requiring the plaintiffs to make a reasonable contribution to the bearing of these added burdens.

■ Further, pertinent to the point under discussion, and generally to the plaintiffs' contentions, is the proposition that different treatment of individuals does not necessarily violate the equal protection of the laws assurances. They may be treated differently by the law or by legal procedures which divides them into classifications, if the classifications have a reasonable relationship to a proper and lawful purpose, and if all persons within the same class are treated equally.[8] From what has been said herein it should be apparent that the treatment of all of the plaintiffs as a class seeking annexation is for a proper and lawful purpose; and that all of the persons in that class are treated equally.

6. *See Bradshaw v. Beaver City*, 27 Utah 2d 135, 493 P.2d 643 (1972); *See also City of Colorado Springs v. Kitty Hawk Development Co.*, 154 Colo. 535, 392 P.2d 467 (1964).

7. Utah Const. Art. I, Sec. 2; U.S.Const. Amd. XIV. Sec. 1.

8. *Hansen v. Public Employees Retirement Sys. Bd. of Adm.*, 122 Utah 44, 246 P.2d 591 (1952); *State v. Mason*, 94 Utah 501, 78 P.2d 920, 117 A.L.R. 330 (1938).

Accordingly, it is our conclusion that the trial court was well advised in rejecting the plaintiffs' contentions and dismissing their complaint. Costs to defendant (respondent).

HENRIOD, C. J., and ELLETT, TUCKETT and MAUGHAN, JJ., concur.