580 P.2d 1289

Petition of Blaine Ramey and Betty Ramey to detach lands hereinafter described from the Corporate Limits of the City of Blackfoot.

Blaine RAMEY and Betty Ramey, Petitioners-Respondents,

v.

CITY OF BLACKFOOT, Respondent-Appellant.

No. 12626.

Supreme Court of Idaho.

June 27, 1978.

Jay H. Stout, of Stout & Moss, Blackfoot, for respondent-appellant.

Dwight E. Baker, of Furchner, Martsch & Baker, Blackfoot, for petitioners-respondents.

McFADDEN, Justice.

This is an appeal from an order of the district court detaching certain real property owned by petitioners-respondents Blaine and Betty Ramey from the city of Blackfoot, respondent-appellant. The order is reversed.

Respondents' twenty-acre tract is part of several hundred acres that were annexed pursuant to I.C. § 50–222[1] by the city of

1. Idaho Code § 50–222 provides:

Annexation of adjacent territory.—Whenever any land lying contiguous or adjacent to any city in the state of Idaho, or to any addition or extension thereof, shall be or shall have been by the owner or proprietor thereof or by any person by or with the owner's authority or acquiescence, laid off into blocks containing not more than five (5) acres of land each, whether the same shall have been or shall be laid off, subdivided or platted in accordance with any statute of this state or otherwise, or whenever the owner or proprietor or any person by or with his authority, has sold or begun to sell off such contiguous or adjacent lands by metes and bounds in tracts not exceeding five (5) acres or whenever the owner or proprietor or any person by or with

Blackfoot in 1975. On four of the twenty acres are located homes occupied by respondents and by respondent Betty Ramey's parents. The remaining sixteen acres are pastureland.

Respondents' tract is surrounded by land lying within the Blackfoot city limits and used for various purposes. (See Appendix.) To the north is a cemetery, which apparently has been within the city limits for some time. On the east of the property is the Yancey subdivision, an area of new homes. To the east of the Yancey subdivision is another area of homes and mobile homes, the Dun-Roamin subdivision. A third subdivision, Harmony Acres, lies to the southeast of respondents' tract. To the southwest is the Blackfoot National Guard Armory and a residential area. To the west of the tract is the Animal Health Clinic, operated by two veterinarians. On the west side of the clinic is a railroad spur and a livestock sales yard.

In 1976, respondents petitioned the district court for detachment of their sixteen acres of pastureland from the city of Blackfoot pursuant to I.C. §§ 50–226 to 233. The

district court entered an order granting detachment and enjoining the city from attempting to reannex the property.

Appellant city of Blackfoot appeals, assigning two errors to the district court's order. Appellant first argues that respondents' land does not meet the detachment statutes' prerequisites for detachment. Appellant also maintains that even if the land meets the conditions for detachment, the remedy of detachment does not apply to lands validly annexed under I.C. § 50–222.

This court holds that the district court erred in finding that respondents' land met all the prerequisites for detachment. The finding that detachment of respondents' land would not "materially mar" the "symmetry" of the city of Blackfoot, an essential finding for the granting of respondents' petition, is clearly erroneous. I.R.C.P. 52(a). The judgment granting detachment is therefore reversed and the cause remanded with instructions to enter an order denying the petition. The court does not reach appellant's other assignments of error.

■ Idaho Code § 50–230 [2] states that the district court shall grant detachment if

his authority requests annexation in writing to the council, or when a tract of land is entirely surrounded by properties lying within the city boundaries, it shall be competent for the council, by ordinance, to declare the same, by proper legal description thereof, a part of such city. When any land not used exclusively for agricultural purposes is completely surrounded by the boundaries of two (2) or more cities, the district court, shall after hearing the owners of the properties involved, and the elected officials of the adjacent cities, determine which if any of the cities may annex said lands.

Railroad right of way property may be annexed when property within the city adjoins both sides of the right of way notwithstanding any other provision of this section. Provided, that the city may annex only those areas which can be reasonably assumed to be used for orderly development of the city. Provided further, that said council shall not have the power to declare such land, lots or blocks a part of said city, if they will be connected to such city only by a shoestring or strip of land upon a public highway.

2. Idaho Code § 50–230 provides:

Separation of agricultural lands—Judgment of separation.—If, upon the hearing, the court shall find that such tract or tracts

of land are tracts containing at least five (5) acres and are included within the corporate limits of such city and the lands included within such tract or tracts are used exclusively for agricultural purposes, provided, however, if there is upon or over such tract or tracts of land a railroad or canal right of way, such tract or tracts shall, if no other reason exists, be deemed to be used exclusively for agricultural purposes, within the meaning of this section; that such lands do not receive sufficient special benefits to justify the retention of said lands within the corporate limits of such city, and that by the detachment of said lands the symmetry of the city would not be materially marred, then the judge of said court shall grant the prayer of said petition and shall enter judgment and decree accordingly: Provided, however, that if said petition prays for detaching several tracts of land the court may enter judgment granting the prayer of the petition as to such tract or tracts as come within his findings as aforesaid and deny such petition as to such tract or tracts which do not come within his findings as aforesaid.

And said tract or tracts of land sought to be detached and for which the said judgment is entered detaching the same shall, upon the entering of said judgment, become detached

it finds that the tract of land for which detachment is sought: (1) contains more than five acres; (2) is used exclusively for agricultural purposes; (3) receives insufficient benefits to justify retention within the corporate limits; and (4) is of such character that the symmetry of the city would not be materially marred by detachment. All four conditions must be met for detachment.

This court has construed the fourth condition—that the land be of such character that detachment would not "materially mar" the "symmetry" of the city—in three cases. In the first case, *Lyon v. City of Payette*, 38 Idaho 705, 224 P. 793 (1924), this court reversed a judgment detaching a ten-acre "island" from the city of Payette. The island left only two "small, narrow necks" connecting the part of the city north of the tract with that part south of it. In view of these facts, this court held that there was insufficient evidence to support the trial court's finding that detachment would not materially mar the symmetry of the city. *Lyon* is the only previous case decided by this court dealing with "island" property.

In *Maxwell v. City of Buhl*, 40 Idaho 644, 236 P. 122 (1925), decided a year later, this court noted that "the word 'symmetry' as used in [I.C. § 50–230], does not seem to have been judicially defined." 40 Idaho at 647, 236 P. at 123. The court then stated:

The definition given by Webster is as follows:

"1. A due proportion of the several parts of a body to each other; adaptation of the form or dimensions of the several parts of a thing to each other; harmonious relation of parts; as, the symmetry of a Greek temple.

"2. Conformance; consistency; congruity.

"3. Correspondence or similarity of form, dimensions or parts on opposite sides of an axis, center or a dividing plane."

. . . . .

In determining whether or not the symmetry of the city would be materially marred by detachment, . . . due regard must be had to the contours of the land covered by the city.

40 Idaho at 647–48, 236 P. at 123. Based upon this definition, the court determined that the district court had erred in rejecting the petition for detachment in toto and that two of the six parcels should have been detached.

In *Ball v. Village of Parma*, 49 Idaho 40, 286 P. 24 (1930), this court extensively elaborated upon the *Maxwell* definition of symmetry:

We think that the symmetry that is involved here is equally if not more, concerned with the general outlook upon the surroundings within the village limits adjacent to residence and business districts than it is with the regularity of the exterior boundary lines. The lands and lots within a municipality are in important matters under the regulation of the village governing body, and it is thought that, if to withdraw that regulation would permit of a condition which would mar the general surroundings in any definite section of the municipality, then the symmetry of the village would be marred to that extent, for to that extent it mars the harmonious relation of the different parts of the municipality for dwelling and business purposes. If to take village supervision from lands which by their proximity to the platted residence or business district would tend to mar the surroundings, then and on that account we think symmetry of the municipality would be marred by the detachment. Because it renders a part of the municipality, on account of the segregation, out of harmony with other parts in being less desirable for residential and business purposes, and on that account we think the symmetry of the municipality would be marred by the detachment. In other words, the

from such city and the corporate boundary line or limits of said city shall be deemed changed accordingly, and said tract or tracts

so detached shall be free from the government of such corporation from said date.

. . . . .

symmetry of the municipality may require municipal authority over close-in, unplatted lands, though they may be agricultural in use, aside from the condition of the exterior boundaries. It will be noted in this case that each tract that was found to be entitled to detachment was not abutting upon any platted portion of the village. As the village remains after this decree, there is considerable unplatted land between that which is platted and the city limits on every side. Over this land the village council has jurisdiction. If the Ball tract were removed, this element of symmetry would be broken, and the city limits would be against the border of the platted portion on the west side, and on that side only. 49 Idaho at 45–46, 286 P. at 26. The court then noted that detachment would bring the village limits a quarter mile closer to the business and residential districts. Although the land was undeniably more than five acres and used exclusively for agricultural purposes, the court determined that removing the land from village control would mar the symmetry of the village. The court therefore affirmed the denial of the detachment petition.

 While regularity in shape is an important element, the *Ball* case shows that symmetry means more than due proportion of the parts of a body, conformance and consistency, and correspondence or similarity of form on opposite sides of an axis or center. Symmetry also involves the ability of the municipality to regulate adjoining lands whose use affects the quality of life in residential and business districts of the community. Symmetry thus requires not only regularity in the shape of the city, but also a measure of consistency, harmony and uniformity of regulation.

 In the instant case, the district court's findings show that respondents' pastureland is surrounded by land being used in a variety of ways, from stockyards to homes, but all of the uses related to the existence of the community. It is precisely this kind of situation that was anticipated in *Ball* when the court said that "symme-try" includes "village supervision [over] lands [in] proximity to the platted residence or business district." 49 Idaho at 45, 286 P. at 26. Yet the result reached by the court below in this case is the opposite of those reached in *Ball* and *Lyon*. Not only does the district court's order give the city an unusual shape by creating it in a sixteen acre "hole," but the order also denies the city supervision over lands surrounded by and in close proximity to businesses and homes. In addition, the record shows that the area is being developed for a variety of uses that may not be entirely compatible. Under these circumstances it is inappropriate that the city be denied supervision over a portion of this part of the city. This court therefore holds clearly erroneous the district court's finding that detachment of respondents' sixteen acres of land would not materially mar the "symmetry" of the city of Blackfoot. Because respondents' land does not meet all four prerequisites for detachment under I.C. § 50–230, detachment must be denied.

Reversed and remanded with directions to deny respondents' petition for detachment. Costs to appellant.

BAKES and BISTLINE, JJ., concur.

SHEPARD, Chief Justice, dissenting.

I feel required to dissent in the instant case because, in my judgment, the majority opinion rejects this Court's usual standard of review and perhaps makes inoperable or at least curtails Idaho's detachment statute. I.C. § 50–230.

The court below viewed the premises and its surroundings under the statute which expressly authorizes such procedure. I.C. § 50–229. *See also Hammond v. City of Chubbuck,* 95 Idaho 618, 515 P.2d 565 (1973); *Ball v. Village of Parma,* 49 Idaho 40, 286 P. 24 (1930). Based on the testimony and other evidence presented to the trial court and its view of the premises, the trial court made a finding of fact that detachment would not materially mar the symmetry of the city of Blackfoot. In my judgment, this Court should not replace that

valid finding with one of its own, but on the contrary must view the evidence presented in a light most favorable *to the respondent. In re Webber's Estate,* 97 Idaho 703, 551 P.2d 1339 (1976). In a similar detachment case, *Chaney v. Village of Middleton,* 58 Idaho 289, 72 P.2d 850 (1937), this Court stated:

Appellant [Village] further contends the evidence is insufficient to sustain the judgment in that it does not show the detachment of the land will not mar the symmetry of the village; also that it fails to show the land does not receive sufficient special benefit to justify its retention within the corporate limits.

The symmetry of the village will not be marred by the change in its boundaries which will result in the detachment of respondents' land. There is some conflict in the testimony as to whether the land of respondents has derived, or will derive, any substantial benefit from being within the corporate limits, but that tending to support respondents' contention clearly preponderates over that offered in opposition thereto. *The trial judge listened to the evidence and examined the premises.* He had a better opportunity than have we to judge as to the credibility of the witnesses, and he was on the ground where he could see what they were testifying about.

*Id.* at 295, 72 P.2d at 852 (emphasis added).

I do not believe the finding of fact by the district court was clearly erroneous and, if nothing else, the split decision in this case should indicate that it was not.

The majority opinion focuses on the question of symmetry and, even more narrowly within that concept, on whether the detachment of property wholly surrounded by the boundaries of a municipality necessarily disturbs the symmetry of the municipality. Such is admittedly a difficult issue. The Idaho case of *Maxwell v. City of Buhl,* 40 Idaho 644, 236 P. 122 (1925), is a leading case on the national scene and most often cited in regard to the question of city symmetry. *See, e. g., In re Peterson,* 92 Utah 212, 66 P.2d 1195 (1937); Annot., 62 A.L.R.

1011 (1929); Black's Law Dictionary 1619 (rev. 4th ed. 1968); 83 C.J.S. *Symmetry* 932 (1953). "Symmetry," as defined by *Maxwell,* requires due proportion of the parts of a body, conformance and consistency, and correspondence of similarity of form on opposite sides of an axis or center. It is my judgment that, as found by the trial court, the *Maxwell* elements would continue to be present in the city of Blackfoot after the detachment of the Rameys' 16 acres. The exterior or physical symmetry of the outside boundaries of the city of Blackfoot was not perfect prior to the detachment of the Ramey property and will be no less perfect after detachment. The *Maxwell* decision also defines "mar" and "materially," and under those definitions the city of Blackfoot is not disfigured by the annexation. In argument, the Rameys' "island property" was analogized to a hole in a doughnut, which is natural and which does not necessarily disturb symmetry. I would agree, but would add that such is a matter of proof and here that burden of proof was sustained. *See Town of Fond du Lac v. City of Fond du Lac,* 22 Wis.2d 533, 126 N.W.2d 201 (1964).

The majority opinion here also relies on *Ball v. Village of Parma,* 49 Idaho 40, 286 P. 24 (1930). The surroundings of the detached land were explicitly considered by the *Ball* decision in its ascertainment of symmetry. In the instant case, the trial court took into consideration the surroundings of the Ramey property in arriving at its decision. Functionally, the Rameys' property fits in well with neighboring uses, such as the railroad and stockyards, a cemetery, a veterinary clinic, an armory, the Eastern Idaho State Fairgrounds, and a racetrack. Not only does the Ramey property use for agricultural purposes fit well into the area, but it has the additional effect of acting as a natural buffer between the stockyards to the west and an area of new homes to the east. *See In re Peterson,* 92 Utah 212, 66 P.2d 1195.

Statutes permitting detachment of lands for municipalities should be liberally construed to effect their purpose. *See Wol-*

*bach v. Villege of Flossmoor,* 329 Ill.App. 528, 69 N.E.2d 704 (1946). The Illinois court, in quoting from an earlier case, stated:

> "The Legislature has determined that an evil exists in compelling owners of tracts of twenty acres or more, not subdivided and which border a city or village, to pay taxes for urban benefits. It is obvious that unsubdivided tracts of this size do not possess any characteristics of city or village property. They receive no practical benefits from being within the limits of such municipality and contributing, by paying taxes, to the expense of the maintenance and administration of such local governmental agency."

*Id.* at 704–05.

I believe the above language is clearly applicable to the circumstances of the case at bar. The district court found, and in my judgment, correctly, that the conditions for detachment under our statute were present. Such findings, again in my judgment, are sustained by the evidence, and the decision of the district court therefore should be affirmed.

DONALDSON, J., concurs.

APPENDIX