Clyde B. FREEMAN, Plaintiff
and Appellant,

v.

CENTERVILLE CITY, Golden L. Allen,
Mayor; and Centerville Planning Com-
mission, E. Lee Hawkes, Chairman; and
Robert B. Hansen, Attorney General,
State of Utah, Defendants and Respon-
dents.

No. 15904.

Supreme Court of Utah.

Sept. 21, 1979.

**1004**

Clyde B. Freeman, pro se.

Keith Stahle, Centerville City Atty., Bountiful, Robert B. Hansen, Atty. Gen., Jack L. Crellin, Asst. Atty. Gen., Salt Lake City, for defendants and respondents.

STEWART, Justice:

The property of the plaintiff, Clyde B. Freeman, was annexed by an ordinance passed by Centerville City pursuant to the provisions of § 10–2–401 U.C.A. (1977 Supp.)[1] Freeman initiated a declaratory judgment action in the Second Judicial District for Davis County to test the constitutionality of the annexation. The trial court granted defendants' motion to dismiss for failure to state a claim and upheld the constitutionality of § 10–2–401.[2] From that order plaintiff appeals, arguing that the statute is constitutionally defective because it fails to provide that those in the area to be annexed must receive notice of the annexation proceedings and the right to elect whether or not to have their property annexed. In this regard he basically claims that because his property would be subject to tax assessments, liens, and encumbrances imposed by the City, he is deprived of property without due process of law. We affirm the judgment of the trial court.

Section 10–2–401 is the exclusive process provided by the Legislature whereby a municipality may extend its corporate limits by annexation. Pursuant to this statute, the initiative in the annexation process lies with the owners of the real property who seek annexation process. An accurate map of the property must be filed in the recorder's office of the municipality, together with a written petition signed by a majority of the owners and by the owners of not less than one-third of the total value of the area to be annexed. The governing body of the municipality may then enact an ordinance formally annexing the subject property.

No claim is made in this case that the City of Centerville failed to comply with this procedure in annexing plaintiff's property. The plaintiff does vigorously contend, however, that the statute itself is unconstitutional, under the due process clause of the Utah Constitution, Article I, § 7.[3] Plaintiff specifically claims a deprivation of his property because annexation to a different jurisdiction will significantly alter his property rights in connection with such matters as taxation, zoning, and water rights. Plaintiff contends that these effects cannot be accomplished without formal legal notice to him of the proposed annexation and the right to vote on the proposal in an election duly called in the area sought to be annexed.

---

1. U.C.A. refers to Utah Code Annotated; all statutory references hereafter are to U.C.A. (1953), as amended.

2. Section 10–2–401 provides in pertinent part as follows:

 Annexation of contiguous territory. Whenever a majority of the owners of real property and the owners of at least one third in value of the real property, as shown by the last assessment rolls, in territory lying contiguous to the corporate boundaries of any municipality, shall desire to annex such territory to such municipality, they shall cause an accurate plat or map of such territory to be made under the supervision of the municipal engineer or a competent surveyor, and a copy of such plat or map, certified by the engineer or surveyor as the case may be, shall be filed in the office of the recorder of the municipality, together with a written petition signed by a majority of the real property owners and by the owners of not less than one third in value of the real property, as shown by the last assessment roles, of the territory described in the plat or map; and the governing body of the municipality, at a regular meeting shall vote on the question of such annexation.

 This provision was amended by the 1979 Legislature to make minor changes not pertinent here. Laws of Utah, 329–30, 1979, Chapter 35.

3. Plaintiff, a landowner in the area to be annexed, also contends that the annexation is void under Article I, § 24 of the Utah Constitution which provides that "[a]ll laws of a general nature shall have uniform operation;" under Article I, § 26 which provides that the provisions of the Constitution are mandatory and prohibitory unless otherwise declared; and, finally, plaintiff contends that the annexation is in violation of Article IV, § 8 which provides in substance that all elections shall be by a secret ballot. These contentions are patently without merit.

■ The power to change or modify municipal boundaries is a legislative function, and as long as the statutory process is complied with, the courts will not generally interfere with the legislative prerogative, even though a person's property by becoming subject to a different jurisdiction may be subject to different rules, obligations, or assessments. *Bradshaw v. Beaver City*, 27 Utah 2d 135, 493 P.2d 643 (1972); see also *In Re Town of West Jordan*, 7 Utah 2d 391, 326 P.2d 105 (1958); *Application of Peterson*, 92 Utah 212, 66 P.2d 1195 (1937); *Plutus Mining Co. v. Orme*, 76 Utah 286, 289 P. 132 (1930); *Kimball v. Grantsville City*, 19 Utah 368, 57 P. 1 (1899). Cf. *Hunter v. City of Pittsburgh*, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907); *Dillon on Municipal Corporations* (5th Ed.) 617, § 355.[4]

In enacting § 10–2–401 the Legislature established a means for annexation which calls for the consent of both the annexing municipality and a majority of the property owners in the area seeking annexation. The initiation of the annexation process by petition is not the equivalent of an election, nor need it be. It is only the triggering process for the concerned municipality to consummate the annexation procedure by exercising its legislative power if it deems it appropriate to do so.

■ In keeping with general constitutional principles, a legislative body, such as a municipality, need not give legal notice of the kind required generally to initiate judicial action; nor indeed is it required to give any notice at all with respect to the annexation of territory to a municipality. *City of Tucson v. Garrett*, 77 Ariz. 73, 267 P.2d 717 (1954); *City of Cedar Rapids v. Cox*, 250 Iowa 457, 93 N.W.2d 216 (1958); *Lenox Land Co. v. City of Oakdale*, 137 Ky. 484, 125 S.W. 1089 (1910). Thus, in enacting § 10–2–401, the Legislature was under no constitutional obligation to require that le-

gal notice be given to those in the area to be annexed.[5]

■ The Legislature was also clearly within its right to provide a mechanism for annexation which does not require an election by those affected. The Iowa Supreme Court in *Wertz v. Ottumwa*, 201 Iowa 947, 208 N.W. 511, 513, 514 (1926), stated what we hold to be the applicable law in this case:

We think that a failure to provide for a notice and hearing on the question of annexation does not render the statute unconstitutional. The Legislature had power to provide by law how municipalities shall be incorporated, and also how their boundaries may be extended. The Legislature did not transcend constitutional limitations by the statute in question in failing to provide that the question of annexation of territory to an existing municipality must be submitted to a vote of the people interested therein. In the absence of constitutional limitations to the contrary, the Legislature may, by statute, provide for the extension of the boundaries of a municipality without the assent of the inhabitants of either the municipality or the territory to be annexed. [Citations omitted.]

The statute is not unconstitutional because no notice of the proposed annexation was given to appellants and because the question of annexation was not submitted to a vote of the electors of the annexed territory.

The complex and far-reaching problems that have arisen from the development of sprawling suburban communities may well call for annexation even when a small group of individuals, for reasons completely sufficient to them, oppose what is in the interest of the public at large. The legislation in question, in seeking to promote the

---

4. See also 1 Antieau, Municipal Corporation Law, § 1A.01 (1979); 2 McQuillian, Municipal Corporations, § 7.03 (Rev. 3rd Ed. 1979).

5. In some instances of the establishment of a change in municipal boundaries, the Legislature has required that an election be held. See

§ 10–2–102 (incorporation); § 10–2–606 (consolidation); § 10–2–701 (dissolution of a municipality). Indeed, in territorial days an election was part of the procedure for annexation, Chapter XI, Article XVII, Compiled Law of Utah, 647–48, 1888.

public interest, relies upon an essentially political process. We find no basis in the Constitution for making the general annexation process subject to conditions beyond those stated in the statute.

The plaintiff's contention that he should at least have sufficient notice to provide time to generate enough sentiment on the part of his neighbors to oppose the annexation has some appeal. He argues that private interests are sometimes advanced to the detriment of the general welfare by speedy action being taken before dissenting property owners have the opportunity to mobilize and, through the democratic process of argument and persuasion, change a sufficient number of minds of those who initially favored annexation.

 It is, however, the duty and responsibility of the annexing municipality to exercise the prudence and sound judgment that will prevent inappropriate annexations and assure that they are in the public interest. The governing body of the municipality must take into account not only the welfare of the petitioners, but also the welfare of those who reside within its established borders in determining whether to pass an ordinance of annexation. Accordingly, a municipality is not bound in the exercise of its judgment by a petition, even though signed by a majority of landowners, to pass an ordinance necessary to complete annexation. *Cottonwood City Electors v. Salt Lake County Bd. of Comm'rs*, 28 Utah 2d 121, 499 P.2d 270 (1972). However, the courts of this State are not without power in cases in which annexation or other boundary changes are arbitrary or in excess of statutory authority. *Child v. City of Spanish Fork*, Utah, 538 P.2d 184 (1975);

*Bradshaw v. Beaver City*, 27 Utah 2d 135, 493 P.2d 643 (1972). See, generally, 1 Antieau, *Municipal Corporation Law*, § 1A.01; 2 McQuillian, *Municipal Corporations*, § 7.10 (Rev. 3rd Ed. 1979). There is, however, no claim in this case that the annexation of the property involved was so arbitrary as to be arbitrary or unreasonable.

The judgment of the trial court is affirmed.

CROCKETT, C. J., and MAUGHAN and WILKINS, JJ., concur.

HALL, Justice (concurring):

I concur in upholding the constitutionality of the municipal annexation statute, but it is my opinion that notice is statutorily required prior to annexation.

The annexation statute in effect at the time this controversy arose did not specifically contain a notice provision.[1] Nevertheless, governing bodies are called upon to vote upon annexation proposals at regular meetings scheduled for such purposes.[2] Consequently, the general statute pertaining to open and public meetings comes into play and requires that the "public body shall give reasonable notice of the agenda, date, time and place of each of its meetings."[3] The statute further provides as follows:

Public notice shall include, but need not be limited to:

(a) Posting written notice at the principal office of the public body, or if no such office exists, at the building where the meeting is to be held.

(b) Providing notice to at least one newspaper of general circulation within the geographic jurisdiction of the affected resident or owner. The notice shall briefly summarize the nature of the application and state that a copy of the full application is on file at the office of the commission.

---

1. However, the subsequent enactment (in 1979) of U.C.A., 1953, 10–2–409 explicitly provides for notice and reads in pertinent part as follows:

 . . . [A]t least 20 days prior to the hearing upon a proposal, the chairman [of the local boundary commission] shall have notice of hearing published in a newspaper of general circulation within the affected territory, except that when there are 25 or fewer residents or property owners within the affected territory, mailed notice may be given to each

2. U.C.A., 1953, 10–2–402 (1977 Supp.).

3. U.C.A., 1953, 52–4–1 et seq. (1977 Supp.) in effect at the time this controversy arose. It has since been amended but said amendments are not pertinent to the issue here.

public body, or to a local media correspondent.

Plaintiff's claim is essentially that the statute is unconstitutionally violative of due process because of the absence of any notice provision. Plaintiff does not contend that the notice must be personally served but asserts that *no* attempt was made by the city to inform those persons affected by the annexation hearing.

Inasmuch as plaintiff admits he had actual notice of the hearing and was in attendance, he has no standing to challenge whether or not the notice provisions were complied with. The complaint therefore fails to state a cause of action and was properly dismissed.