Peter DOENGES, Miles Crockard, William Bowen, Richard H. Watson, Carl Peterson, and Emigration Improvement District, Plaintiffs and Respondents,

v.

CITY OF SALT LAKE CITY, a Municipal Corporation, Emigration Properties Partnership, a Utah limited partnership, Bowers-Sorenson Construction Company, a Utah Corporation, and Fred A. Smolka, Defendants and Appellants.

Nos. 16649, 16663.

Supreme Court of Utah.

June 17, 1980.

Roger F. Cutler, Salt Lake City Atty., Walter R. Miller, Deputy City Atty., Douglas J. Parry of Martineau, Rooker, Larsen & Kimball, Salt Lake City, for defendants and appellants.

E. Craig Smay, Park City, for plaintiffs and respondents.

WAHLQUIST, District Judge:

Two cases have been merged. In one, the appellants request that a permanent injunction, restraining the enforcement of an annexation ordinance, be lifted. In the other, the appellants request that the state statutes outlining the petitioning procedure for annexation of an area to a city be held constitutional.

Between September of 1977 and August of 1978, landowner groups in Emigration Canyon filed three separate petitions requesting annexation of adjoining property to Salt Lake City. Each petition purported to comply with the statute which went into effect in May of 1977. Two of the petitions purported to have one hundred percent of the landowners' signatures, and the third, fifty-five percent. The petitioners claim ownership of the required proportion of value of the areas. The city joined the three petitions and treated them as one.

Numerous hearings were held between September, 1977, and April of 1979. The hearings were before the Zoning and Planning Commission, a special Blue Ribbon Committee, and the City Commission. It became clear that the City Commission was about to approve the annexation.

On April 1, 1979, the respondents filed an action requesting:

First, a finding that the City Commission was inappropriately weighing the evidence; and

Second, that an injunction be granted preventing the annexation. The assertion was that the State statute outlining the petitioning procedure for an annexation was unconstitutional.

On April 10, 1979, the City Commission purportedly annexed the area. On April 26, 1979, the respondents amended their com-

plaint to request a permanent injunction, stopping the annexation. Both sides moved for summary judgment. The trial court granted a permanent injunction on the theory that the statute outlining the annexation procedure was unconstitutional. The Court did not rule on the other issues.

■ The fixing of municipal boundaries is a Legislative function.[1] However, it is totally impractical for the State Legislature to debate and decide every city boundary change proposed over the entire state. Since before statehood, the Legislature has delegated this power to the city governments.[2]

The Revised Statutes of Utah, 1933, 15–3–1, read:

Whenever a majority of the owners of real property in territory lying contiguous to the corporate limits of any city or town shall desire to annex such territory to such city or town, they shall cause an accurate plat or map of such territory to be made . . . together with a petition in writing, signed by a majority of the real property owners of the territory described in said plat; and the board of city commissioners or the city council

. . . shall vote upon the question of such annexation.

Similar statutes exist in many states. The formula is not always the same. In early California statutes, the ownership needed was one-quarter of the ownership of the area in the petition.[3] In other states, the city needed no petition.

The Utah statutes remained without substantial change for a long time.[4] The procedure under this statute had become very cumbersome.

In 1957, after the first *Howard v. Town of North Salt Lake*, 3 Utah 2d 189, 281 P.2d 216 (1955), the Legislature inserted the following words:

. . . and the owners of not less than one-third in value of the real property, as shown by the last assessment rolls, . . . and by the owners of not less than one-third in value of the real property, as shown by the last assessment rolls.[5]

■ The question of the constitutionality of this statute on the grounds here asserted has never reached this Court before.[6] The earlier litigation concerned the eligibility of persons signing, and whether or not persons could add or subtract their names from the petitions.[7]

1. Recently, in *Freeman v. Centerville City*, Utah, 600 P.2d 1003 (1979), Justice Stewart spoke for the Court: "The power to change or modify municipal boundaries is a legislative function, and as long as the statutory process is complied with, the courts will not generally interfere with the legislative prerogative, even though a person's property by becoming subject to a different jurisdiction may be subject to different rules, obligations, or assessments."

2. *Levy v. Salt Lake City*, 3 Utah 63 (1881). Cities, boundaries and powers are set by legislative act. 62 C.J.S. Municipal Corporations § 41, p. 122.

Laws of the Territory of Utah, Chapter LXVII, Municipal Corporations, approved March 8, 1888, provides in part: "Section 2. The boundaries of any municipal corporation may be altered and new territory included therein, after proceedings had as required in this section. The council of such corporation may, upon receiving a petition therefor signed by not less than two-fifths of the property owners residing in the territory proposed by such petition to be annexed to such corporation, submit to the electors residing in such territory the question whether such territory shall be

annexed to such corporation and become a part thereof."

3. California General Laws (1939).

4. See *Howard v. Town of North Salt Lake*, 7 Utah 2d 278, 323 P.2d 261 (1958).

5. *State of Utah v. Murray City Corp.*, No. 244,-592 (Third District, Jan. 20, 1978) is an example of the continuing complexity of weighing such petitions. Also see, for a discussion of the problems, Summary of Utah Law: Land Use, Zoning and Eminent Domain, Brigham Young University Journal of Legal Studies, Chap. XIV Annexations, Sec. 2a [§ 14.7] The Majority Requirement; & [§ 14.8] Assessment Rolls As A Basis For Determining Ownership.

6. *Freeman v. Centerville*, supra, note 1, was a challenge to this statute's constitutionality, but on other grounds; however, see Utah Law on Municipal Boundary Changes: Anarchy Among Modern City States, 1977 Utah L.Rev. 697.

7. *Jensen v. Bountiful City*, 20 Utah 2d 159, 435 P.2d 284 (1967).

Historically, the taxes that supported cities and towns came primarily from a real property assessment, as did school taxes, and the revenue to pay off municipal bonds. The views of landowners were granted special weight. This concept has eroded under the development of the "one man-one vote" concept and the general increased importance of taxations such as income tax, sales tax, excise taxes, and others that contributed to the general fund. The United States Supreme Court has held that the differences between the interest of real property owners and non-real property owners are not of sufficient substance to justify the excluding of non-real property owners from the political processes involving voting, and such is a violation of equal protection. *Kramer v. Union School District*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); *Phoenix v. Kolodciejski*, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970).

General statutes limiting voting in bond elections and school elections to real property owners are now unconstitutional. However, the parties have not cited any important precedents directly holding that a mere right to petition a legislative body for a decision is equivalent to a voting right.[8] The statutes permitting persons with property interests to petition for zoning changes, for the formation of special improvement districts,[9] and annexation to incorporated areas [10] have not yet been successfully challenged. The annexation procedures frequently put special burdens on

real property owners.[11] State Legislatures have been permitted to force these interests into focus at the petitioning stage.

The fact situation before us is a challenge to a statute purportedly only restricting the right to petition. The final decision on annexation is left to the City Commission. The Commission is selected by the general voting residents of the city. The authorities cited to us have not gone as far as we are here requested to go. Our own past state precedents,[12] the most recent precedents from neighboring states,[13] and the latest federal precedents [14] all support the statutes. We hold our statute is constitutional.

■ Some legal scholars indicate that the late "one man-one vote" precedent has nothing to do with petitioning franchises; but it can be asserted that a petitioning statute can be so authored that petition-signing is the equivalent of voting, or the franchising of *property*, as opposed to *people*. This view has support in the dictum found in many decisions, both state and federal. If we assume for the purposes of considering the following issue, that the statute attempting to limit the right to petition for annexation to landowners in the majority, holding at least one-third of the real property, is unconstitutional, the logical question that then arises is: "Does the presence of an unenforceable limitation on the right to petition deprive the city governing body of the power to annex?" We hold that it does not.

8. See *Freeman v. Centerville City*, supra, note 1, which discusses this problem.

9. See *Salyer Land Company v. Tulare Lake Basin Water Storage District*, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973), which fully discusses the *Kramer v. Union School District* and the *Phoenix v. Kolodciejski* cases, and permits voting by acres in a water district; the attack was by lessees, residents, small owners, employees and consumers.

10. *Torres v. Village of Capitan*, 92 N.M. 64, 582 P.2d 1277 (1978), petition to annex by freeholders is not voting, and is constitutional. *Berry v. Bourne*, 588 F.2d 422 (4th Cir. 1978) a statute in North Carolina requiring a petition of a percentage of the acreage in the area, was held constitutional.

11. See *Bradshaw v. Beaver City*, 27 Utah 2d 135, 493 P.2d 643 (1972), an annexation where conditions were imposed on real property owners including the installation of water lines and preparing portions for paving. Also see *Child v. City of Spanish Fork*, Utah, 538 P.2d 184 (1975), where annexation required landowners in the area to be annexed to contribute two acre-feet of irrigation water for each acre annexed.

12. *Freeman v. Centerville*, supra, note 1.

13. *Torres v. Village of Capitan*, supra, note 10.

14. *Berry v. Bourne*, supra, note 10.

The issue is whether the limitations are severable from the general grant of power to annex. This Court decided *Cypert v. Washington County School District,* 24 Utah 2d 419, 473 P.2d 887 (1970), soon after *Phoenix v. Kolodciejski,* supra was decided. The Utah statute restricted voting in school bond elections to real property taxpayers. It was held to be unconstitutional; however, such a holding threatened the capacity of the school districts to make major capital improvements. Chief Justice Crockett, writing for the majority, stated:

> Notwithstanding our emphatic disagreement with the majority in the Phoenix case, we realize that it is for the present to be recognized as the law; and that as such it renders these aspects of Section 3 of Article XIV of our State Constitution, and Sections 11–14–2 and 5, U.C.A.1953, inoperable insofar as they require that only property taxpayers be permitted to vote in such bond elections. We further observe that this should have no effect whatsoever in nullifying or limiting any other aspect of those provisions of the law. In other words, it is our opinion that the aspect of those provisions just referred to as having been rendered inoperable, are severable from the other aspects of the aforesaid provisions of our State Constitution and statutes, so that bond elections may be held and bonds

may be issued by cities, towns, counties, school districts, or other authorized public entities at a proper election participated in by all qualified voters; and without the latter being limited to those paying property taxes.

The analogy is clear insofar as the question of severability is concerned.[15]

The question of severability is primarily a question to be answered by determining the legislative intent. Senate Bill 204 was passed March 10, 1977, and became effective May 10, 1977. The petitions in question were signed and filed after the effective date of the 1977 statute. This statute was a sweeping repeal, and re-enactment with changes, of Title 10 of the Utah Code governing cities and towns. It provides:

10–1–113. *Severability Clause.* If any chapter, part, section, paragraph or subdivision of this act, or the application thereof, is held to be invalid, the remainder of the act shall not be affected thereby.

10–1–114. *Repealer.* The following acts, chapter, title and sections, are repealed, except as provided in Section 10–1–15.

(1) Chapters 1, 2, 3, 4, 5, 6 and 14 of Title 10.

(The old statute covering annexation procedures was Chapter 3.)

---

15. See *Curtis v. Board of Supervisors of Los Angeles County,* 7 Cal.3d 942, 104 Cal.Rptr. 297, 501 P.2d 537 (1972). It is cited by the respondents, but gives little support. In that case, that court had before it a statute that required, first, that those desiring to form a new city petition a statutory commission who would hold a hearing, and if the commission approve the proposal, they call for an election; second, the petition must be signed by 25 to 50 owners of real property; and third, the proposal is then stoppable by a petition signed by the owners of 51 percent of the assessed valuation of the land in the area.

The petition to form the city was purportedly vetoed. The Court did not comment on the need for the 25 to 50 landowners' signatures that brought the proposal forward. It held the veto power unconstitutional, and then held "veto provision" severable.

" 'The test of severability is whether the invalid parts of the statute can be severed from the otherwise valid parts without destroying the statutory scheme, or the utility of the remaining provisions.' The invalidation of Section 34311—except the first sentence, which provides simply that the board of supervisors shall hold a hearing—will leave a viable statutory scheme for the incorporation of cities, consisting of an application to, and approval by, the local agency formation commission; petition to the board of supervisors; hearing before that board; and an incorporation election. The elimination of the special veto powers of landowners does not destroy the whole statutory scheme or the remaining portions of the statute.

We may reasonably presume that the Legislature would prefer to preserve a procedure for the incorporation of cities in California, absent the landowner veto provision, rather than totally to eliminate such procedure so that no city at all could be incorporated." Id. 104 Cal.Rptr. at 312–313, 501 P.2d at 552–553.

The precedents cited by the respondents here, and the decisions rendered by the United States Supreme Court, were reported and well known when this legislation was enacted. It was also known that this Court had struck down tax levies on an area where the annexation proceeding had not been preceded by a petition with sufficient signatures.[16] There was no severability clause in the earlier acts. To risk the frustration of all territorial changes in cities or towns cannot be intelligently assumed to be the intended desire of the Legislature, if the petitioning form they anticipated was enforceable.[17]

No doubt the Legislature would have preferred that the cities be empowered to annex an area only if there were prior utility services or broad support among the property owners holding substantial value within the area under consideration; and it cannot be doubted that if they believed such a limitation could not be imposed, they would nevertheless have allowed annexations to occur. This intent is further evidenced by the great pains the Legislature went to in outlining the factors that would be considered in boundary changes and the formation of local boundary commissions.[18]

The appellants in this case challenge the capacity of those attempting to contest the statute to appear in court for that purpose. This Court cannot conceive of any group who would have a right to raise this issue if this one does not. The group seeking an injunction include: a resident renter in the territory purportedly annexed, a landowner purchasing after the assessment rolls were made up, landowners who could have joined in the petition had they deemed such action to be wise, but take the contrary view, owners of an adjoining property, shareholders in corporations holding land in the area in question, and Salt Lake County as amicus curiae. The capacity of this group to contest the annexation is clear. Also, the brief of Salt Lake City and the included request that we hold the statute constitutional is also signed by the Attorney General of the State of Utah in behalf of the state.

The permanent injunction granted on the ground that the limitations on the right to petition in the statute are unconstitutional is removed. The case is remanded to the court below for a determination of the remaining issues.

CROCKETT, C. J., and MAUGHAN, HALL and STEWART, JJ., concur.

WILKINS, J., having disqualified himself, does not participate herein.

---

**16.** See *Peterson v. Bountiful City*, 25 Utah 2d 126, 477 P.2d 153 (1970). This constitutional issue was not raised; therefore an insufficient petition was held to void annexation.

**17.** The continuing intent of the legislative body was clearly evident in the action of the 1979 Legislature. In House Bill No. 61, passed March 8, 1979, effective May 8, 1979, this was long after this controversy was well under way. The Legislature repealed the annexation procedure and re-enacted it with certain amendments. It not only left standing the Severability Clause in the earlier 1977 general laws governing the powers of cities and towns, but the Legislature went on to provide that cities would not annex areas without the anticipated petition, or when the action was preceded by special services; but they then added into Chapter 2, concerning boundaries, an additional Severability Clause, (Section 25 of the Act) which reads as follows:

If any provision of this act, or the application of any provision to any person or circumstance, is held invalid, the remainder of this act shall not be affected thereby.

See House Bill 61, passed March 8, 1979, in effect May 8, 1979, Utah Code Annotated, 10–1–104 and 10–2–401 through 423.

**18.** House Bill 61, supra, note 17.